(588 P.2d 486)

No. 49,496

SOUTHGATE STATE BANK AND TRUST COMPANY, a Kansas Banking Corporation, *Appellee and Cross-Appellant,* v. UNITED PACIFIC INSURANCE COMPANY, *Appellant and Cross-Appellee.*

Opinion filed January 5, 1979.

*James W. Bouska,* of Bouska & Allen, of Overland Park, and *Bernard L. Balkin,* of Kansas City, Missouri, for the appellant and cross-appellee.

*Fred J. Logan, Jr.,* and *Thomas H. Bornholdt,* of Cooke, North, Dickson & Bornholdt, Chartered, of Prairie Village, for the appellee and cross-appellant.

Before PARKS, P.J., SWINEHART and MEYER, JJ.

PARKS, J.: Plaintiff, Southgate State Bank and Trust Company, is insured under two liability insurance bonds. Primary coverage by Kansas Bankers Surety Company insures plaintiff up to $25,000, while defendant, United Pacific Insurance Company, insures plaintiff against liability in excess of $25,000 but less than $1,675,000. Except for the deductibles and limits of coverage, the language of relevant portions of both bonds is identical. Reasonable legal expenses may be incurred in defense actions under the provisions of both policies.

The present controversy arose when a $407,000 third-party complaint was filed against the bank. Both insurers were notified of the suit. The primary insurer agreed to defend the plaintiff but the defendant excess insurer refused. Apparently fearing an excessive judgment, the plaintiff bank retained private counsel to assist the primary insurer in its defense of the suit. The claim against the bank was settled for $12,500; subsequently the bank initiated this action seeking to recover attorney fees expended both in defending the third-party complaint and in bringing the recovery action itself. Although the Johnson County district court entered summary judgment for the plaintiff bank, it denied plaintiff's prayer for costs and fees in the recovery action. Defendant appeals and plaintiff cross-appeals.

One purpose of liability insurance is to provide the insured

with an adequate defense against claims under the policy and to protect the insured from the expenses and costs of such litigation. The duty of an insurance company to defend an insured pursuant to its policy contract requires the utmost good faith on the company's part. Rules governing the duty to defend vary according to the language of the policies and according to whether the company is the sole, primary, or the secondary insurer.

Whether the carrier be the sole or the primary insurer, the duty to defend rests primarily on the possibility that coverage exists. This possibility may be remote, but if it exists the company owes the insured a defense. The possibility of coverage must be determined by a good-faith analysis of all information known to the insured or all information reasonably ascertainable by inquiry and investigation. *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.,* 212 Kan. 681, 686, 512 P.2d 403 (1973). However, where two insurance companies have issued general liability insurance policies to the same insured and each is obligated to defend, if one company affords a defense, the insured is not damaged because of the failure of the other to defend. *Farmers Elevator Mut. Ins. Co. v. American Mut. Lia. Ins. Co.,* 185 Neb. 4, Syl. ¶ 8, 173 N.W.2d 378 (1969).

The present case does not involve a situation in which a single insurance carrier, obligated to defend an action on a claim covered by its policy, did not act in good faith in refusing to defend an action against its insured. We find to the contrary that plaintiff was not left without a defense or coverage, but was adequately defended by Kansas Bankers under its obligation to do so. As regards Kansas Bankers, its liability was fixed with respect to its obligation to plaintiff. In respect to defendant, plaintiff bank could only look to defendant for any liability in excess of the policy limits of Kansas Bankers' policy. Hence the bank proceeded on its own rather than under the provisions of the secondary bond when it elected to independently retain additional counsel. Since plaintiff was adequately protected under the Kansas Bankers' policy, the refusal by defendant to defend plaintiff did not enhance plaintiff's liability or exposure to liability. *Donahue Construction Co. v. Transport Indemnity Co.,* 86 Cal. Rptr. 632, 7 Cal. App. 3d 291 (1970).

Accordingly, we hold that it was error for the trial court to grant plaintiff's motion for summary judgment, and to award plaintiff

attorney fees incurred in defending the third-party complaint. We further hold that the trial court was correct in denying plaintiff attorney fees in the present action.

Judgment is reversed insofar as the appeal and affirmed insofar as the cross-appeal.

MEYER, J., dissenting: I respectfully dissent from the first portion of the majority's opinion.

Plaintiff Southgate seeks indemnity for its court costs and attorney fees from defendant United Pacific under defendant's bankers blanket bond policy. General Agreement D of that bond provides in part:

"The Underwriter will indemnify the Insured against court costs and reasonable attorney's fees incurred and paid by the Insured in defending any suit or legal proceeding brought against the Insured to enforce the Insured's liability or alleged liability on account of any loss, claim or damage which, if established against the Insured, would constitute a valid and collectible loss sustained by the Insured under the terms of this bond."

In my opinion the trial court correctly concluded that the third-party complaint against Southgate was one which, if established, would constitute a valid and collectible loss under the terms of defendant's bond.

Although the existence of primary and excess coverage is indeed relevant to the two insurers' respective portions of liability, the primary-excess distinctions do not pertain to the duty to defend the insured.

The Kansas Supreme Court in *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.,* 212 Kan. 681, 686, 512 P.2d 403 (1973) held:

"[W]e conclude the duty to defend rests primarily on the possibility that coverage exists. This possibility may be remote, but if it exists the company owes the insured a defense. The possibility of coverage must be determined by a good-faith analysis of all information known to the insured or all information reasonably ascertainable by inquiry and investigation. If ambiguities in coverage, including exclusionary clauses, are judicially determined against the insurer the ultimate result controls the insurer's duty to defend."

The majority cites this same language in its opinion but dismisses it by contending that the contractual duty by one insurer to defend is eliminated if the other insurer accepts defense of their mutual insured. Absent specific language to this effect in the policy, it is unreasonable to assume that the insured contracted

for such a one-defense-to-a-claim position when it agreed to pay premiums to two different insurers. Nor do I think this is what the court in *Spruill* intended. See also *Green Construction Co., Inc. v. Liberty Mutual Ins. Co.,* 213 Kan. 393, 394, 517 P.2d 563 (1973); and *U. S. .Fidelity & Guaranty Co. v. Continental Ins. Co.,* 216 Kan. 5, 8-9, 531 P.2d 9 (1975).

In *Maryland Cas. Co. v. American Family Insurance Group,* 199 Kan. 373, 429 P.2d 931 (1967), the Kansas court held that although defendant American Family's policy provided primary liability coverage, the plaintiff still owed the insured a contractual duty to defend that was distinct from the "excess-primary" classifications of the two insurers. The court said, at 199 Kan. 386:

"In our opinion, plaintiff, under its policy, had a contractual duty with its insured (Willis) to defend the lawsuit instituted by the injured party, and such duty was personal and distinct from indemnification. Accordingly, plaintiff had no right of contribution from the defendant for attorneys' fees incurred in making such defense, notwithstanding that the defendant may also have had a duty to defend Willis as an omnibus insured. [cite omitted.]"

Defendant argues that *Maryland Cas. Co.* (admittedly an automobile insurance case) does not apply to the situation here because auto insurers have a duty to defend, whereas bankers bond insurers have only a duty to indemnify the costs of defense. I question the validity of this distinction.

In *United States Fidelity & Guar. Co. v. Tri-State Ins. Co.,* 285 F.2d 579 (10th Cir. 1960), the primary insurer refused to defend a liability claim against the insured. The excess insurer, USF&G, did defend, and then sued the primary carrier for contribution for the costs of a successful defense. The court held that both insurers had separate contractual duties to the insured to provide defense, regardless of the merits of the claims against him, stating at 285 F.2d 582:

"Tri-State did breach its contract with Kerr by refusing to defend. This obligation existed regardless of the merit or lack of merit of the claim. . . . U. S. F. & G. also had a policy obligation to defend Kerr and this obligation, unlike the secondary liability as an excess carrier for indemnification, was a primary obligation co-existent with that of Tri-State. The agreement to furnish such service, several with the two companies, is distinct from and in addition to the insuring agreement pertaining to liability. . . . The duty to defend is personal to each insurer. The obligation is several and the carrier is not entitled to divide the duty nor require contribution from another absent a specific contractual right. [cites omitted]"

It is true that here, neither Kansas Bankers nor the defendant had a duty to one another concerning plaintiff's defense. It must be noted, however, that here it is the *insured* who seeks indemnification for costs of defense incurred as a result of defendant's refusal to provide defense.

The insured in *Wint v. Fidelity & Casualty Company of New York,* 9 Cal. 3d 257, 107 Cal. Rptr. 175, 507 P.2d 1383 (1973), was covered by a primary insurance policy with a maximum limit of $10,000 and by an excess policy, with a $100,000 limit. When suit was brought against the insured, he notified his insurers, requesting a defense from both. Only the primary carrier agreed to defend, the excess carrier claiming that the damages sought were excluded from coverage under its policy.

The California Supreme Court disagreed, stating at 9 Cal. 3d 261:

"If there is potential liability on the part of an insurer under a policy of insurance, there is a duty to defend, and the insurer is liable for all damages reasonably incurred by the insured in the event of a failure to defend. (*Gray v. Zurich Insurance Co.,* 65 Cal. 2d 263 [54 Cal. Rptr. 104, 419 P.2d 168].)"

The excess insurer in *Wint* argued that even if it had a duty to defend its insured, its failure to do so was inconsequential because the primary insurer had undertaken the defense. The majority makes essentially the same contention here, claiming that defendant could refuse to defend once Kansas Bankers accepted Southgate's defense, because it was defendant which stood to lose if the defense was unsuccessful. This not only ignores the potential damage to Southgate's professional reputation, but it places the entire burden of defense upon the insurer with the much smaller liability limit. The California court in *Wint* rejected the argument, stating at 9 Cal. 3d 263:

"[A] defense by an insurer whose policy has a limit far below the amount claimed cannot be equated to the defense of an insurer who stands to lose 10 times as much as the insurer who defends. This court has, in fact, held that where more than one insurer owes a duty to defend, a defense by one constitutes no excuse of the failure of any other insurer to perform. (*Continental Cas. Co. v. Zurich Ins. Co.,* 57 Cal. 2d 27, 37 [10] [17 Cal. Rptr. 12, 366 P.2d 455].)"

When a claim was filed against its insured far in excess of the deductible amount, there was potential liability under defendant's bond. I do not think, as defendant argued, that the "other insurance" provision of its policy obviated its duty to defend the

named insured. Indeed, the Kansas Bankers' policy contained the exact "other insurance" provision. The existence of the identical clauses was intended to prevent double recovery by the insured and to limit each insurer's liability to a proportion of the loss according to the deductible-outside limits of each policy.

The provision does not, however, affect or relieve either insurer from its contractual obligation to indemnify the insured for court costs and attorney fees. That duty is dependent upon the possibility, however remote, of coverage.

In retrospect it is easy to conclude, as does the majority, that plaintiff was "adequately protected under the Kansas Bankers' policy." At the time the third-party complaint was filed against plaintiff, however, neither plaintiff nor defendant knew that the claim would ultimately be settled for an amount within the primary policy limits. Defendant did not have the luxury of speculating the final outcome of the litigation against its insured; at the time the claim was brought defendant owed plaintiff an absolute, contractual duty of defense. I agree with the trial court that defendant breached that duty, and I would affirm that court's decision.

I concur with the majority opinion as to plaintiff's cross-appeal.