**DESERET FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff and Appellant,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY and United Pacific Insurance Company, Defendants and Respondents.**

**No. 19311.**

Supreme Court of Utah.

Feb. 21, 1986.

Edward M. Garrett, Michael A. Katz, Salt Lake City, for plaintiff and appellant.

Ford G. Scalley, Raymond M. Berry, Joy L. Sanders, Salt Lake City, for defendants and respondents.

HOWE, Justice:

The district court granted defendants' motions for summary judgment. Plaintiff appeals.

Plaintiff Deseret Federal Savings and Loan Association acquired real property in Salt Lake City for the construction of a branch bank. In June of 1977, it leased one of the buildings on the property to Catherine's Beauty Salon. The lease was for five years with an option to renew for three years and included covenants of quiet enjoyment and peaceful possession. Catherine's was aware of the plan to build a branch bank. In September, Deseret Federal requested cancellation of the lease, but Catherine's refused.

Deseret Federal hired Gramoll Construction Company to demolish adjacent buildings on the property. Demolition began in October and continued through December. During this period, there were brief interruptions in Catherine's electricity, heat, and water due to the interconnection of the utilities in Catherine's shop and the buildings being demolished. Gramoll had apprised Deseret Federal and Catherine's of the necessity of the interruptions and to the greatest extent possible had tried to minimize the impact on Catherine's business.

In January of 1978, Deseret Federal offered to buy back the lease. Catherine's refused, and Deseret Federal advised Cath-

erine's that it would make no further "improvements" to the building. Between January and April, no construction or demolition work was performed. Catherine's, however, complained several times to Deseret Federal about leaks in the building's roof. Deseret Federal's refusal to repair the roof led Catherine's to write a letter demanding $10,000 for breach of covenant of quiet enjoyment.

On April 24, Gramoll Construction obtained an owner's protective liability policy from defendant United Pacific Insurance Company (UP) that named Deseret Federal as the insured. Deseret Federal also maintained similar separate insurance with defendant United States Fidelity & Guaranty Company (USF & G). In May, Gramoll signed a contract for construction of the branch bank building. In June, Catherine's filed suit against Gramoll and Deseret Federal [1] for damage to its leasehold and business on grounds of negligence [2] and breach of covenant of quiet enjoyment.

As construction went forward, Catherine's business dropped off, presumably because of noise and impaired access to the premises. In November, after paying rent for the month, Catherine's closed its business. When Catherine's employees returned to remove some equipment, they found that Deseret Federal had changed the locks and they could not enter.

In January of 1979, Catherine's amended its complaint to include constructive eviction as a ground for relief. Deseret Federal tendered the defense of the suit to both USF & G and UP. USF & G defended Deseret Federal, but UP refused, claiming that it could have no liability under the policy; UP did, however, defend on behalf of Gramoll Construction.[3] At trial, it was held that: (1) Gramoll did its work in a workmanlike manner; and (2) the actions of Deseret Federal amounted to a constructive eviction. Catherine's was awarded judgment against Deseret Federal for $23,-

000 for the value of the lease and $7,000 for damage to its business.

Deseret Federal satisfied the judgment and brought this suit against USF & G and UP for indemnification under the respective policies of insurance. On cross-motions for summary judgment, the district court found that there was no "tangible property damage" caused by an "occurrence" as required by the policy and granted summary judgment to defendants.

Plaintiff raises two issues on appeal: First, did the district court err in holding that defendants had no liability to indemnify under their respective insurance policies? Second, did UP breach its duty to defend?

I

The policies in question contain nearly identical clauses and definitions providing coverage for "property damage" caused by an "occurrence" during the policy period. "Property damage" is defined as "physical injury to or destruction of tangible property ... including the loss of use thereof, provided such loss of use is caused by an occurrence during the policy period." The key to determining coverage is whether there was an "occurrence" causing damage. "Occurrence" is defined as "an *accident* including injurious exposure to conditions which result, during the policy period, in bodily injury or property damage neither *expected* nor *intended* from the standpoint of the insured." (Emphasis added.)

Plaintiff argues that although the individual acts (demolition, construction, failure to repair, and lockout) may have been intentional, the results of those actions (constructive eviction and the accompanying judgment) were unintended. In support of this proposition, plaintiff cites a line of New York cases that follow the view expressed by Judge Cardozo in *Messers-*

---

**1.** Civil case No. C78–3784, Third District Court.

**2.** The negligence claims were dismissed prior to trial.

**3.** Gramoll was named as a defendant and also faced a cross-claim by Deseret Federal. The court held in favor of Gramoll on the suit and dismissed the cross-claim.

*mith v. American Fidelity Co.*, 232 N.Y. 161, 166, 133 N.E. 432, 433 (1921), that intended actions can have unintended results. *See also Mingachos v. CBS, Inc.*, 196 Conn. 91, 491 A.2d 368 (1985); *Riverside Insurance Co. v. Wiland*, 16 Ohio App.3d 23, 474 N.E.2d 371 (1984); *McGroarty v. Great American Insurance Co.*, 36 N.Y.2d 358, 368 N.Y.S.2d 485, 329 N.E.2d 172 (1975).

■ The damages for which Deseret Federal contends it is entitled to be indemnified under the policies of the insurers arise from a judgment for constructive eviction. Implicit in that judgment is a finding of intent on the part of Deseret Federal to evict Catherine's. Such intent is a necessary element of constructive eviction. "[T]o constitute an eviction, other than by physical ouster, there must be some act done by the lessors on the premises with the *intent* of depriving the lessee of the enjoyment and occupation...." *Skally v. Shute*, 132 Mass. 367, 369 (1882) (emphasis added). However, since it can be inferred that the landlord intends the natural and probable consequences of his acts, the intent may be implied. In *Thirteenth and Washington Streets Corp. v. Neslen*, 123 Utah 70, 77, 254 P.2d 847, 851 (1953), we stated that an intent to evict may be implied whenever the landlord's conduct substantially deprives the tenant of the use of the premises. The landlord does not have to have an actual subjective intention to compel the tenant to leave; it is enough that his acts or omissions make reasonably necessary the tenant's leaving. *Scott v. Prazma*, Wyo., 555 P.2d 571, 86 A.L.R.3d 338 (1976); *Pierce v. Nash*, 126 Cal.App.2d 606, 272 P.2d 938 (1954). Thus, despite Deseret Federal's protestations that it did not intend to interfere with Catherine's business and that it took precautions during demolition and construction, a constructive eviction could be and was nevertheless found.

■ The defendant insurance companies had a duty to pay all sums which the insured was legally obligated to pay because of "unexpected or unintended" damage to "tangible property." Deseret Federal concedes that the acts causing the damages were intentional. The court's conclusion that there had been a constructive eviction necessarily was based on a finding that the consequences of those actions were also intended. Such damages are not the type of unexpected and unintended damages covered by the policies. Thus, the district court was correct in finding that there was no "occurrence" as that term is defined in the policies.

This result finds support in *Millard Warehouse, Inc. v. Hartford Fire Insurance Co.*, 204 Neb. 518, 283 N.W.2d 56 (1979), where the insured in a policy similar to the policies in the instant case constructed a warehouse in the flood plain of a creek. In so doing, he relied on the advice of his expert hydrologist that no damage to adjacent property could occur. However, certain government agencies were of the opposite opinion and so informed the insured. In a suit brought by a nearby owner to declare the warehouse a nuisance and remove it, it was held that the insurer could have no liability under the policy since any resulting damage would be intended or expected and thus not an "occurrence," even though its owner had no intention of causing harm to nearby properties. Reliance was placed on cases which hold that the natural and probable consequences of actions are not accidents.

## II

■ We turn now to the issue of whether UP breached its duty in refusing to defend Deseret Federal when Catherine's sued for constructive eviction and breach of covenant of quiet enjoyment. The duty to defend is broader than the duty to indemnify, but the insurer's obligation is not unlimited; the duty to defend is measured by the nature and kinds of risks covered by the policy and arises whenever the insurer ascertains facts which give rise to the potential of liability under the policy. *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 275–77, 54 Cal.Rptr. 104, 113, 419 P.2d 168, 177 (1966).

In cases where the insurer's duty is not clear, judicial clarification can be obtained through a declaratory judgment. UP did not seek declaratory judgment. However prudent it may have been to do so, UP was under no obligation to seek resolution of the issue of coverage in a declaratory proceeding. *American Employer's Insurance Co. v. Crawford,* 87 N.M. 375, 533 P.2d 1203 (1975).

The insurer must make a good faith determination based on all the facts known to it, or which by reasonable efforts could be discovered by it, that there is no potential liability under the policy. *Southgate State Bank & Trust Co. v. United Pacific Insurance Co.,* 3 Kan.App.2d 37, 588 P.2d 486 (1979); *Spruill Motors, Inc. v. Universal Underwriters Insurance Co.,* 212 Kan. 681, 686, 512 P.2d 403, 407 (1973). This means that there are no disputed facts which if proved by the plaintiff at trial would result in liability under the policy. However, this does not mean that the insurer can simply say, "We don't believe that the plaintiff can prove what he is alleging." The insurance contract includes the duty to defend even if the allegations in a suit are groundless, false, or fraudulent. The question is whether the allegations, if proved, could result in liability under the policy. *Holland America Insurance Co. v. National Indemnity Co.,* 75 Wash.2d 909, 911, 454 P.2d 383, 385 (1969).

The policy describes the damages covered as "bodily injury or property damage caused by an occurrence" and then provides that "the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage...." Catherine's complaint did not allege, even in substance, bodily injury or property damage caused by an "occurrence." Catherine's alleged facts to support claims for breach of covenant of quiet enjoyment and constructive eviction. Those allegations presented no potential liability under UP's insurance policy. Where there is no potential liability, there is no duty to defend. *Gray v. Zurich*

*Insurance Co.,* 419 P.2d at 178; *St. Paul Fire and Marine Insurance Co. v. Superior Court (Yuba County),* 161 Cal.App.3d 1199, 208 Cal.Rptr. 5 (1984).

The lower court made no error in applying the law in this case. It properly found that there was no liability for indemnification under the policies in question and no breach of the duty to defend. The judgment below is affirmed. Costs are awarded to defendants.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.