In the Matter of the Ancilliary Liquidation of Mission Insurance Company, Mission National Insurance Company and Enterprise Insurance Company:

Azco Hennes-Sanco, Ltd., Appellant,

v.

Wisconsin Insurance Security Fund, Respondent.

Court of Appeals

*No. 92–1839. Submitted on briefs May 6, 1993.—Decided June 3, 1993.*

(Also reported in 502 N.W.2d 887.)

For the appellant the cause was submitted on the briefs of *J. Ric Gass* and *Mark M. Leitner* of *Kravit, Gass & Weber, S.C.*, of Milwaukee.

For the respondent the cause was submitted on the brief of *Jeffrey J. Kassel* and *Teresa M. Elguezabal* of *LaFollette & Sinykin* of Madison.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

EICH, C.J.   We decide in this case that an excess liability insurer, Mission National Insurance Company, owed no duty under the terms of its policy to defend its insured and is not responsible for attorney fees and other costs, where the primary carrier provided a defense and the action was settled within the limits of the primary-level policy — even though the plaintiffs' claims originally exceeded the limits of the primary-level policy.

The facts are not in dispute. Two employees of Azco Hennes-Sanco, Ltd., were injured in a plant explosion and sued the company, one seeking $24,000,000 in

damages, and the other $2,500,000. Azco had a primary liability insurance policy with Employers Insurance of Wausau with a limit of $500,000 per insured occurrence. It also had an excess umbrella policy issued by Mission National Insurance Company which provided $10,000,000 in excess coverage per insured occurrence.

Azco tendered the defense of the actions to Employers, which hired an attorney to protect Azco's interests under the primary policy. Azco also tendered the defense to Mission. Mission, however, declined the tender and never appeared in any way in either of the actions. Azco then hired a second attorney to protect it against excess liability. Several months later, Mission was placed in liquidation.

The attorney hired by Azco to protect its excess liability exposure was instrumental in settling the two cases within Employers' $500,000 policy limit, thus avoiding any question of excess liability. The attorney then billed Azco for some $11,000 in fees for his services, and Azco sought reimbursement from Mission's liquidator, the Wisconsin Insurance Security Fund, claiming that Mission's policy obligated it to indemnify Azco for the defense expenses.

When the fund denied liability and a hearing examiner upheld its position, Azco sought review in circuit court.[1] The court dismissed the petition, holding

---

[1] The appeal record contains a "memorandum decision" of a hearing examiner acting for the Insurance Security Fund and indicating that he was "presiding as directed by Chapter 646 [of the Wisconsin Statutes]." We see nothing in that chapter dealing with hearings or hearing examiners. In any event, the examiner, acting on behalf of the fund, proceeded to decide Azco's claim based on stipulated facts and no issue is advanced on this appeal concerning the examiner's authority, and no

that under the terms of its policy, Mission owed no duty to defend the action and was not otherwise liable for Azco's attorney's fees. When the court denied Azco's motion for reconsideration, Azco appealed.

■

The existence and extent of Mission's duty to defend or otherwise contribute to the costs of defending and settling the cases involves construction and application of the language of its policy. It is a question of law, which we review *de novo*, owing no deference to the trial court's decision. *Carrington v. St. Paul Fire & Marine Ins. Co.*, 169 Wis. 2d 211, 218, 485 N.W.2d 267, 269 (1992).

Subject to its terms, Mission's policy insures Azco against "all sums which [it] shall become legally obligated to pay as damages on account of . . . Personal Injuries" arising out of "occurrences covered under th[e] policy . . . ." The policy states that Mission, "[a]s respects occurrences covered under this policy, *but not covered under the underlying insurance[ ]*," will defend the insured against any suit "alleging liability insured under the provisions of this policy . . . ." (Emphasis added.) The term "occurrence" is defined as "an accident or happening or event . . . which unexpectedly and unintentionally results in personal injury . . . ."

Under the heading "Limit of Liability," the policy provides that Mission "shall only be liable for the [insured's] ultimate net loss" up to a limit of $10,000,000 "in respect of each occurrence . . . ." "Ultimate net loss" is defined as the total sum which the insured or its primary insurers are required to pay by reason of personal injuries or other claims, "either through adjudication or compromise," including

argument was made that his decision is entitled to any special deference.

"expenses for . . . lawyers . . . and for litigation, settlement, adjustment and investigation of claims and suits which were paid as a consequence of any occurrence covered hereunder . . . ." The policy then states: "[Mission] shall not be liable for expenses as aforesaid when such expenses are included in other valid and collectible insurance."

The policy language is plain: Mission's duty to defend is limited to suits against Azco stemming from occurrences which are covered under its policy, "but not covered under the underlying insurances," while the limit of Mission's liability is stated in terms of the insured's "ultimate net loss," including attorney fees and the expenses of "litigation, settlement [and] adjustment," the policy expressly states that Mission shall not be liable for such expenses when they are "included in other valid and collectible insurance." Given that language, we see no duty on Mission's part to defend or pay the expenses where the suits are settled within the limits of the primary-level policy.

Azco disagrees. Placing principal reliance on a federal district court case, *American Motorists Ins. Co. v. Trane Co.*, 544 F. Supp. 669 (W.D. Wis. 1982), *aff'd*, 718 F.2d 842 (7th Cir. 1983), it argues first that because Employers' policy had a limit of $500,000, and because the employees' suits sought damages in the millions and tens of millions of dollars, "[t]he complaints obviously alleged claims . . . which were unquestionably 'not covered by the underlying insurances.' " Thus, says Azco, Mission had a duty to defend and thus an obligation to pay its attorney's fees and other costs incurred in defending and settling the actions.[2]

_____

[2] When an insurer has a duty to defend and does not, it is responsible for the reasonable costs of the defense, if coverage is

The plaintiff's complaint in *American Motorists*, like the complaints in this case, alleged damages well in excess of the limits of the primary policy, and Chief Judge Crabb concluded that that fact alone was sufficient to trigger the excess carrier's duty to defend, and that the duty exists "even if the underlying insurer undertakes the defense as well." *Id.* at 692.

We are, of course, not bound by a federal district court's opinion on Wisconsin law. *Professional Office Bldgs., Inc. v. Royal Indem. Co.*, 145 Wis. 2d 573, 580-81, 427 N.W.2d 427, 429-30 (Ct. App. 1988). Azco acknowledges this rule but argues that we should nonetheless follow the district court's reasoning. We decline to do so for several reasons.

First, the case is distinguishable on its facts. In *American Motorists* the primary insurer refused to defend, whereas in this case Azco's primary insurer undertook its defense in the action. Second, the quoted language from the district court's decision appears to conflict with what has been described as the "majority rule" that "the excess insurer is not obligated to defend until the primary [policy] limits are exhausted." *Firemen's Fund Ins. Co. v. Rairigh*, 475 A.2d 509, 518 (Md. App.), *cert. denied*, 482 A.2d 501 (1984), citing A.D. WINDT, INSURANCE CLAIMS AND DISPUTES, sec. 4.11 (1982). In the revised edition of the cited text, the author states:

> Most courts have held that an excess insurer that has a duty to defend is not obligated to provide a defense if the primary insurer is so obligated. Since

determined to exist. *Patrick v. Head of Lakes Coop. Elec. Ass'n*, 98 Wis. 2d 66, 72-73, 295 N.W.2d 205, 209 (Ct. App. 1980), citing 7C APPLEMAN, INSURANCE LAW AND PRACTICE, secs. 4681-83 (1979).

the primary insurer's duty, once activated, encompasses the claims that have been made against the insured regardless of whether they are in excess of the primary insurer's policy limits, the excess insurer's duty to defend does not come into existence. A.D. WINDT, INSURANCE CLAIMS AND DISPUTES, sec. 4.11, at 155-56 (2d ed. 1988).[3]

Azco maintains, however, that Mission's policy plainly obligates it to defend against any "claim" made against Azco which is not covered by the underlying insurance; and since the employees' "claims" as alleged in their complaints exceed the limits of the primary policy, Mission must defend. The policy, however, frames Mission's duty to defend not in terms of "claims," but rather in terms of "occurrences" not covered by the underlying insurance. And we agree with the Fund that the difference is important. The policy defines "occurrence" as an "accident . . . result[ing] in injury . . . ." Thus, Mission would have a duty to defend only if the accident — the explosion in which the suing employees were injured — was not covered by the underlying insurance; and in this case it was.[4]

---

[3] In *Signal Cos. v. Harbor Ins. Co.*, 612 P.2d 889 (Cal. 1980), for example, the primary carrier argued, as Azco does here, that the amount of the claim as made controls the excess carrier's obligation to defend. The California Supreme Court rejected the argument, noting that adopting such a position "essentially would make [the excess carrier] a coinsurer with [the primary carrier] with a coextensive duty to defend." *Id.* at 893.

[4] At least two other courts interpreting the identical language in another Mission policy have reached a similar conclusion in parallel state and federal cases: that Mission had no duty to defend when the "occurrence" was covered by the underlying policy — notwithstanding the fact that the complaints sought damages in excess of the primary-level policy

Finally, Azco argues that Mission should be held responsible for its attorney's fees under the "ultimate net loss" provisions of the policy. As we have noted above, the Mission policy agreed to pay Azco's "ultimate net loss" in excess of the limits of the underlying insurance, including legal expenses, that Azco was obligated to pay as a result of a covered personal injury. The argument stems from the same assertion that forms the basis of Azco's other contentions: that "Mission['s] coverage was implicated the moment a claim exceeding $500,000 was asserted against [it]." It follows, says Azco, that under the "ultimate net loss" provisions of the policy, any litigation expenses paid as a consequence of the occurrence giving rise to the claim were covered as well. Again, we disagree.

First, the plain language of Mission's policy defining "ultimate net loss" states that the company "shall not be liable for attorney fees and the expenses of litigation and settlement when such expenses are included in other valid and collectible insurance." As indicated, the employees' lawsuits were settled by Azco's primary insurer for a gross amount within the coverage limits of its policy.

---

limits. *Mission Nat'l Ins. Co. v. Duke Transp., Inc.*, 792 F.2d 550 (5th Cir. 1986); *Radar v. Duke Transp., Inc.*, 492 So.2d 532 (La. Ct. App. 1986). *See also Garmany v. Mission Ins. Co.*, 785 F.2d 941, 947 (11th Cir. 1986), where the court of appeals held that the "not covered by . . . underlying insurance" phrase in the Mission policy "speaks only to the *fact of coverage* under the underlying policy, *not to the extent of coverage* under that policy," and thus "it . . . cannot be said that [the insured] was 'not covered' because he received only $20,000 of coverage under that policy [in the face of a total judgment in excess of $500,000]." (Emphasis added to original.)

Second, we note that the precise issue was before the Kansas Court of Appeals in *Southgate State Bank & Trust Co. v. United Pac. Ins. Co.*, 588 P.2d 486 (Kan. Ct. App. 1979), and was rejected. In *Southgate*, a complaint was filed against the insured seeking damages in excess of the primary policy but within the limits of the excess policy. As here, the primary insurer defended the case and the excess carrier declined to defend. Again as here, separate counsel was retained to protect the insured against the possibility of excess liability, and, when the case was eventually settled for an amount within the primary policy limit, the insured sought to recover the fees and costs of its defense from the excess carrier. The court rejected the claim on grounds that the primary insurer had provided an adequate defense, noting also that the insured "could only look to [the excess carrier] for . . . liability *in excess* of the policy limits of [the primary] policy"; which, of course, was not the case, given the settlement. *Id.* at 488 (emphasis added). Thus, said the court, the insured "proceeded on its own rather than under the provisions of the [excess policy] when it elected to independently retain additional counsel." *Id.*

The holding is supported by several authorities.

> The unique feature of the excess policy is that it provides that the excess insurer realizes no obligation to the insured until the primary insurer has exhausted its policy limits. *The excess carrier has no obligation to defend or contribute to a settlement or judgment where the final loss figure, whether by judgment or settlement, is within the primary coverage limit, even where the amount claimed exceeds the primary limits.* Comment, *Excess Insurer's Duty to Defend After Primary Insurer Settles Within Policy Limits: Wisconsin After Loy and Teigen.* 70

571

MARQ. L. REV. 285, 294-95 (1987) (emphasis added) (footnotes omitted).

*See also American Concept v. Certain Underwriters at Lloyds of London*, 467 N.W.2d 480 (S.D. 1991) (excess carrier cannot be made to contribute to insured's costs of defense where case settled within primary policy limits); *American Sur. Co. v. State Farm Mut. Auto. Ins. Co.*, 142 N.W.2d 304 (Minn. 1966) (where suit settled within primary policy limits, primary insurer cannot recover expenses in defense of action from excess carrier). *Accord Hartford Accident & Indem. Co. v. Continental Nat'l Am. Ins. Cos.*, 861 F.2d 1184 (9th Cir. 1988); *P.L. Kantner Agency, Inc. v. Continental Casualty Co.*, 541 F.2d 519 (6th Cir. 1976); *West Am. Ins. Co. v. Allstate Ins. Co.*, 295 F.2d 513 (10th Cir. 1961); *Colorado Farm Bureau Mut. Ins. Co. v. North Am. Reinsurance Corp.*, 802 P.2d 1196 (Col. Ct. App. 1990); *Signal*, 612 P.2d 889; *Occidental Fire & Casualty Co. v. Underwriters at Lloyds London*, 311 N.E.2d 330 (Ill. Ct. App. 1974).

*By the Court.*—Orders affirmed.