(95 P.3d 1033)
No. 90,380

STEPHEN H. RAMSEY and CAROLYN M. RAMSEY, v. LEE BUILDERS, INC., and STEVEN C. LEE, *Appellees,* v. FARM BUREAU MUTUAL INSURANCE COMPANY, INC., *Appellant.*

Opinion filed August 20, 2004.

*Paul Hasty, Jr.*, of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, for appellant.

*Jacob S. Graybill*, of Patterson, Gott & Graybill, L.C., of Wichita, and *John Terry Moore*, of Moore Martin, L.C., of Wichita, for appellees.

Before MALONE, P.J., GREENE and MCANANY, JJ.

MCANANY, J.: Farm Bureau Mutual Insurance Company, Inc. (Farm Bureau) appeals the district court's denial of its motion to dismiss the third-party action, the denial of its summary judgment motion, and the trial court's entry of summary judgment in favor of Lee Builders, Inc. and Steven C. Lee (collectively Lee), as well as its award of attorney fees. We reverse.

This action originated with a claim by Stephen and Carolyn Ramsey that the home they purchased from Lee, the builder, was subject to the infiltration of water that ultimately led to the growth of mold which resulted in respiratory problems for the Ramsey family. Lee had liability insurance coverage at various times with Farmers Alliance Mutual Insurance Company, Farm Bureau, and Utica National Assurance Company (Utica). Lee became embroiled in a dispute with Farm Bureau regarding coverage for, and the defense of, the Ramseys' claim. This led to a third-party action by Lee against Farm Bureau. A more detailed chronology is as follows:

1989 Ramseys purchase home built by Lee. Ramseys first become aware of the leaks in the home.

1990 Ramseys complain to Lee about the leaks. Lee is insured by Farmers Alliance at the time. The Farmers Alliance policy, as well as all other liability policies in this case, are "occurrence" policies.

1992 Lee changes his liability insurance carrier on 3/19/92 from Farmers Alliance to Farm Bureau.

1998 Lee changes his liability insurance carrier on 3/19/98 from Farm Bureau to Utica.

2000
2/18 The Ramseys file suit against Lee.
5/17 Lee is served with process.

5/31 Utica agrees to provide a defense to Lee under a reservation of rights. Utica hires attorney Jay Fowler at Foulston & Siefkin to represent Lee. Utica recommends that Lee provide notice of the claim to Farm Bureau, his former insurer.

6/7 Farm Bureau is notified of the Ramsey suit and that Utica has hired an attorney to defend Lee.

6/19 Farm Bureau writes to Lee to advise that since a lawyer has already been hired by Utica to defend Lee, there is no need for Farm Bureau to step in and also defend Lee.

6/26 Foulston & Siefkin attorney Craig West (who apparently has taken over defense of the matter from attorney Fowler) contacts Farm Bureau and suggests that if Farm Bureau also intends to use his firm for the defense of Lee, then Utica and Farm Bureau should work out an arrangement to split the expense of West's fees 50/50.

6/27 Farm Bureau responds to West and says it does not intend to split with Utica the costs of West's fees because there is no need for Farm Bureau to be involved at this time since Utica is defending Lee under its policy.

7/10 Lee instructs attorney West to file a third-party action against Farm Bureau. West advises Lee that Farm Bureau is a client of his firm and, therefore, he has a conflict of interests and should withdraw from further representation of Lee.

8/30 Utica advises Lee that it will find a new attorney to defend Lee. The new attorney will be directed to bring a third-party action against Farm Bureau. (The new attorney does not represent Lee in the third-party action. Lee's personal counsel asserts the third-party action for him.)

9/25 Attorneys Jacob S. Graybill and John Terry Moore enter their appearance as counsel for Lee. They have been hired by Lee directly to represent Lee in this matter.

9/26 Attorney West withdraws from the case as counsel for Lee. Lee, through attorney Graybill, files a third-party action against Utica and Farm Bureau. By way of relief,

Lee seeks indemnity for the Ramsey claims plus attorney fees, costs, and expenses incurred in defending Lee. Utica files cross-claim against Farm Bureau for contribution for the defense costs it incurs in defending Lee.

10/13 Farm Bureau is notified that West is withdrawing. Utica hires attorney Lynn Hursh to defend Lee.

11/13 Farm Bureau advises Lee that it also retained attorney Hursh to defend Lee under a reservation of rights. (Lee never formally rejects defense by Hursh.)

11/29 Attorney Graybill (Lee's personal counsel) advises Charles Petrik at Farm Bureau that Hursh is not defending Lee.

12/1 Petrik of Farm Bureau writes to attorney Graybill and confirms Graybill's statement that Lee will not accept Hursh as his defense lawyer. Petrik reminds Graybill that Petrik is involved in monitoring and supervising the defense of the claim against Lee and not the coverage issues that are handled for Farm Bureau by attorney Paul Hasty, Jr. Petrik refers Graybill to Hasty for discussions of coverage.

12/4 Graybill writes to Hasty and advises that Lee has not unequivocally rejected Hursh as lawyer. Graybill claims that Lee is entitled to negotiate with Farm Bureau over whom Farm Bureau may hire to defend Lee.

12/5 Attorney Hasty advises Graybill that Hursh has been retained to defend Lee but not to represent Lee in other claims for affirmative relief that Lee may have.

2001

1/16 Utica moves to dismiss the Ramseys' claims against Lee based upon the applicable statute of limitations. Farm Bureau files a similar motion on 2/21/01.

3/15 The motions to dismiss the Ramseys' claims filed by Utica and Farm Bureau are sustained.

4/17 Farm Bureau moves to dismiss the third-party indemnity action as moot due to the dismissal of the Ramseys' claims. Farm Bureau also contends that any remaining

claims by Lee cannot be pursued by way of a third-party action.

4/26 Utica dismisses its cross-claim against Farm Bureau without prejudice. (Apparently the issue of contribution between Farm Bureau and Utica for the costs of defending Lee has been resolved.)

4/27 The trial court overrules Farm Bureau's motion to dismiss without explanation.

4/30 The trial court realigns the parties. Henceforth Lee is designated the plaintiff and Utica and Farm Bureau are designated the defendants.

2002
3/14 Lee and Utica settle the claims against Utica originally asserted in the third-party action. Utica is dismissed as a defendant.

8/19 Both Lee and Farm Bureau file competing motions for summary judgment on the claims originally asserted in the third-party action against Farm Bureau.

11/14 The trial court holds a hearing on the competing summary judgment motions of Farm Bureau and Lee.

12/13 The trial court overrules Farm Bureau's summary judgment motion and grants what is, in effect, partial summary judgment to Lee on the issue of liability, finding, among other things, that
 — Lee is entitled to a defense without a reservation of rights, and Farm Bureau breached its policy by not providing such defense.
 — Lee is entitled to require that counsel hired by his liability insurance carrier file suit against that insurance carrier on its policy.
 — Lee is entitled to judgment for the attorney fees he incurred.

2003
1/30 Hearing to determine the attorney fees issue. The trial court makes findings of fact and conclusions of law.

2/7 Farm Bureau files its notice of appeal.

2/12 Order is filed memorializing court's ruling on the attorney fees issue. Lee is awarded fees of $128,533.07 pursuant to K.S.A. 40-256 and K.S.A. 40-908. No other damages are awarded to Lee.

From these facts arise a multitude of issues which we are asked to consider and resolve. We are asked whether this appeal is timely; whether the district court should have dismissed the third-party action once the principal action was dismissed; whether Farm Bureau had coverage under its liability policy for the Ramseys' claims; whether Farm Bureau had the duty to defend Lee against the Ramseys' claims; whether Farm Bureau breached any duty to defend; and whether the district court's award of attorney fees was proper. In the exercise of judicial restraint, we consider only those issues necessary for a proper resolution of this appeal. Obviously, the issue of this court's jurisdiction to consider this appeal has primacy.

*Jurisdiction*

Lee claims that Farm Bureau's appeal was not timely and, accordingly, this court lacks jurisdiction to hear the matter. Whether jurisdiction exists is a question of law over which we have unlimited review. See *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 414, 997 P.2d 681 (2000).

An appeal may be taken to the Court of Appeals as a matter of right from a final decision. K.S.A. 60-2102(a)(4). A final decision is one which finally disposes of the entire merits of the case and leaves no further questions or directions for future actions by the court. *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 29, 59 P.3d 1003 (2002).

Lee relies on *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 246 Kan. 371, 789 P.2d 211 (1990). In *Snodgrass*, State Farm appealed from a jury's verdict that it wrongfully denied insurance coverage to its insured who had been sued for damages arising from an automobile accident. Judgment was entered against State Farm in the sum of $574,762. State Farm filed its notice of appeal within 30 days of the district court's entry of judgment. Later, Snodgrass moved for and received an award of attorney fees pursuant to

K.S.A. 40-256. State Farm did not appeal the order for attorney fees. This court dismissed State Farm's appeal for lack of jurisdiction, reasoning that there was no final appealable judgment at the time State Farm filed its notice of appeal because the amount of attorney fees to be awarded had not yet been determined. Upon review by the Kansas Supreme Court, the dismissal by this court was reversed. 246 Kan. at 373-79. The Supreme Court concluded: "[A] decision on the merits is a 'final decision' for purposes of appeal whether or not a request or motion for attorney fees attributable to the case remains to be adjudicated." 246 Kan. at 378. From this holding, Lee argues that Farm Bureau had to file its notice of appeal within 30 days following the trial court's ruling on the summary judgment motions and not wait for a determination of the attorney fees to be awarded.

*Snodgrass* does not apply. In *Snodgrass*, judgment was entered against State Farm on issues of liability and damages before State Farm filed its notice of appeal. The issue of attorney fees was a collateral issue. Here, a final decision was not entered and the present case was not ripe for appeal until the issues of both liability and damages were resolved. That did not occur until the trial court made its determination of attorney fees at the January 30, 2003, hearing.

Lee's claims against Farm Bureau in the third-party action were for indemnity and for damages for breach of the obligation to defend Lee under the provisions of the insurance policy. The trial court found that Farm Bureau had breached the contract. As a remedy, Lee sought to recover attorney fees and costs. (Lee's claim for indemnity against the claims of the Ramseys became moot when the Ramseys' claims against Lee were dismissed on motions filed by the two insurance companies.) In fact, attorney fees and related costs and expenses were the sole damages ultimately sought by Lee for the claimed breach of Farm Bureau's duty to defend under the policy. The trial court's ruling on December 13, 2002, was, in effect, the granting of partial summary judgment on Lee's motion. The trial court disposed of the liability aspect of Lee's claim, but it left for resolution for another day the issue of damages. That determination was not made until January 30, 2003. The

court's ruling on its award of attorney fees was memorialized in a journal entry filed February 12, 2003. Farm Bureau's notice of appeal, filed February 7, 2003, was timely as a premature notice of appeal. See K.S.A. 2003 Supp. 60-2103(a); Supreme Court Rule 2.03 (2003 Kan. Ct. R. Annot. 9) (notice of appeal filed after announcement of judgment to be entered but prior to actual entry of judgment is effective as notice of appeal). This court has jurisdiction to hear Farm Bureau's appeal.

### Lee's Summary Judgment Motion

We next consider the trial court's order granting summary judgment to Lee on his indemnity claims against Farm Bureau. The court and the parties devoted considerable analysis to the question whether Farm Bureau had coverage for the Ramseys' claims. By the time the court addressed this issue it was, for purposes of the Ramseys' claims, moot. In March 2001, the motions by Utica and Farm Bureau to dismiss the Ramseys' claims on statute of limitations grounds were sustained. By the time the court heard Lee's summary judgment motion in December 2002, there were no outstanding claims against Lee to which the indemnity provisions of the policy would apply.

The duty to defend is a distinct and separate obligation under the policy. While it is true that if there is no coverage there is no duty to defend, in making an analysis of its policy obligation to defend its insured, an insurer must consider all the facts to determine if they present a potential of liability. "The possibility of coverage may be remote, but if it exists the company owes the insured a defense." *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 710, 732 P.2d 741 (1987). Obviously, Farm Bureau ultimately believed it owed Lee a defense since it hired an attorney to represent him. Given the circumstances of the case, the broad latitude of facts that may invoke the duty to defend, and Farm Bureau's own action in hiring an attorney to defend Lee, we conclude that Farm Bureau had the duty to defend Lee against the claims of the Ramseys.

This brings us to the central issue of this appeal: Did Farm Bureau properly fulfill its duty to defend Lee against the Ramseys'

claims? Rather than characterize the court's ruling, we recount the court's findings and conclusions on this penultimate issue:

"Farm Bureau argues that it provided a defense for Lees. By the time Farm Bureau offered to hire Attorney Lynn Hursh, who had also, previously, been hired by Utica to defend Lees, Lees were suing Farm Bureau and Utica for indemnity. Under the circumstances presented in this case, Lees were entitled to have their Third-Party Indemnity Claims prosecuted against Farm Bureau and Utica as a component of Lees' defense. Lees were entitled to have their confidences honored and protected regardless of the fact their defense was paid for by their insurance companies. In that regard, Lees were entitled to insist the attorneys hired by the insurer to defend them not be required to share Lees' confidences or strategy with the attorneys or the company's claims representative responsible for defending the respective carriers against Lees' Third-Party Claims. After the attorney Utica hired withdrew on September 21, 2000, Farm Bureau was obligated to provide truly independent counsel devoted to the advancement of Lees' interest by the exercise of independent professional legal judgment regardless how that might impact Farm Bureau's or Utica's interests.

"In his letter to Mr. Graybill dated December 5, 2000, Farm Bureau's attorney made it clear that the attorney Farm Bureau proposed to hire was not expected to assist Lees in the prosecution of their indemnity claims against Farm Bureau and Utica. In that letter, Mr. Hasty said:

'Mr. Hursch was retained to defend the defendants with regard to the claims made against the defendants by the plaintiffs. Farm Bureau did not retain him to represent the defendants on their affirmative claim for relief.'

"Farm Bureau contracted to provide Lees a defense. That obligation could only be fulfilled by professionally qualified, unconflicted counsel free, willing and able to represent Lees' interests without regard to Farm Bureau's interest. Lees were free to decline to accept anything less. An insured has no obligation to accept a defense under a reservation of rights after the insurer has denied coverage, although the insured may choose to do so. Once Farm Bureau denied coverage, and denied any responsibility to pay a judgment which might follow the defense it offered to provide, Lees were free to decline the offer and provide a more suitable defense for themselves. Lees' refusal to accept Farm Bureau's proposed defense under a reservation of rights was justified and does not relieve Farm Bureau of its obligation to pay for Lees' defense.

"The Court finds as a matter of law that Farm Bureau breached its insurance policy when it failed and refused to provide Lees an unqualified defense."

The trial court correctly noted Farm Bureau's assertion that it provided Lee a defense. Farm Bureau was first notified of the Ramseys' suit after Utica had retained an attorney to defend Lee. Under these circumstances, Farm Bureau took the position that

there was no need to duplicate the representation Utica was already providing to Lee. Farm Bureau's duty to contribute to the cost of defending Lee was a separate matter, one that became the subject of a cross-claim asserted by Utica against Farm Bureau. That issue was apparently resolved between Utica and Farm Bureau since Utica's cross-claim against Farm Bureau was voluntarily dismissed. Lee claims, however, that Farm Bureau's failure to hire a lawyer for him (apparently some other lawyer who would have to work with and coordinate a defense with the attorney hired by Utica) constituted a breach of Farm Bureau's contractual duty to defend Lee. If we assume for the moment that this is so, what damages did Lee suffer as a result of this claimed breach? The simple answer is, none. Farm Bureau's failure to provide duplicate counsel upon first learning of the suit did not cause Lee to sustain any damages, nor did it enhance Lee's exposure to the Ramseys' claims. See *Southgate State Bank & Trust Co. v. United Pacific Ins. Co.*, 3 Kan. App. 2d 37, Syl., 588 P.2d 486 (1979).

Later, 1 month after Farm Bureau learned that attorney West had withdrawn because of a conflict of interests, Farm Bureau informed Lee that it had engaged counsel to defend Lee against the Ramseys' claim, but under a reservation of rights. The 30-day delay in retaining counsel was neither unreasonable under the circumstances, nor did it cause any damage or increased liability exposure to Lee since Utica had hired substitute counsel for Lee shortly after West's withdrawal. Lee's indecision on whether to accept and work with new counsel retained for him did not negate the tender to Lee of a defense, but it does lead to the next issue.

Was the tender of Hursh as substitute defense counsel a sham or did it satisfy Farm Bureau's obligation under the policy to provide a defense? The trial court criticized the quality of the defense offered to Lee. This quality issue did not include any suggestion that attorney Hursh was not competent and qualified to defend Lee against the Ramseys' claims. Rather, the trial court concluded that Farm Bureau had the duty to retain counsel who would not only defend against the Ramseys' claims but also assert claims by Lee against Farm Bureau. Farm Bureau had no such duty. Farm

Bureau's duty to defend was a contractual duty that arose from its insuring agreement, which provides:

"We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages."

Lee does not direct us to any provision in the policy which obligated Farm Bureau to engage counsel for its insured to do anything other than defend an action for which coverage might be invoked under the policy. Simply put, Farm Bureau's defense obligation was limited to the claims asserted against its insured for which coverage might be possible. The elementary nature of this proposition is evidenced by Lee's inability to direct us to any case, in Kansas or otherwise, which expands this duty to include the extra-contractual duty Lee seeks to impose on its liability insurer.

Next, the trial court noted various conflict of interest possibilities. More specifically, the court concluded that counsel retained by Lee's insurer must hold in confidence Lee's strategies relating to his third-party claims against his insurer. How would such a disclosure of confidences happen? Attorney Hursh was retained to defend Lee against the claims of the Ramseys. If Lee wished to pursue independent claims against Farm Bureau, he was not entitled to do so through the use of counsel retained by Farm Bureau solely to defend him. He could, and did, rely on the services of private counsel Graybill for this purpose. There was never a time in this litigation when counsel retained by *any* insurer to defend Lee was also representing Lee in his third-party indemnity claims. Lee had no occasion to communicate in confidence about his indemnity claims with counsel retained by his insurers to defend him, nor can he point to any instance in which he did so.

Lee complains that no "Chinese Wall" was in place to shield him and his defense counsel from Farm Bureau's attorney and personnel defending against his third-party claims. Lee's third-party petition was prepared and filed by Graybill, his personal counsel. West, retained by Utica to defend Lee against the Ramseys' claims, was replaced by Hursh, whom Lee ultimately and effectively re-

jected. Neither West nor Hursh had anything to do with Lee's third-party indemnity claims. Petrik was the Farm Bureau claims manager overseeing Lee's defense against the Ramseys' claims. On the other side of the wall was attorney Hasty who represented Farm Bureau in the defense of the third-party action. Hasty obviously reported to some unidentified person at Farm Bureau, his client. There is no evidence that Petrik was that person. Lee does not demonstrate that any of the claims personnel involved in Lee's defense was also involved in the defense of the third-party action. Nor does he demonstrate that there was any communication between these two groups of employees about these distinct claims. Lee points to no structural or operational defect that caused or made likely any disclosure of confidential information held by a lawyer hired by Farm Bureau to defend him, or the Farm Bureau claims personnel to whom that lawyer reported, to the lawyer hired to represent the separate interests of Farm Bureau or the Farm Bureau personnel to whom that lawyer reported.

Finally, the trial court noted that Farm Bureau's proffered defense of the Ramseys' claims was subject to a reservation of rights and concluded that "Farm Bureau breached its insurance policy when it failed and refused to provide . . . an unqualified defense." The trial court erred in this conclusion. There is no support in the law for the proposition that an insurer breaches its policy obligations by defending an action under a reservation of rights, and Lee suggests none.

The trial court held a separate hearing to determine the damages sustained by Lee in the form of attorney fees and expenses for his personal counsel retained to defend this action. While we note in passing that K.S.A. 40-256 and K.S.A. 40-908 were inappropriate bases to sustain an award of attorney fees had Farm Bureau breached its duty to defend, we need not pursue those issues further in light of the conclusions already reached.

We have determined that beginning November 13, 2000, the steps taken by Farm Bureau to provide a defense to Lee were appropriate under the circumstances and did not constitute a breach of Farm Bureau's duty to defend Lee. We have also determined that before that date, the defense of Lee had been under-

taken solely by Utica; thus, having been provided a defense under Utica's policy, Lee suffered no damages from Farm Bureau's failure to provide a defense. "[W]here two insurance companies have issued general liability insurance policies to the same insured and each is obligated to defend, if one company affords a defense, the insured is not damaged because of the failure of the other to defend. [Citation omitted.]" *Southgate State Bank & Trust Co.*, 3 Kan. App. 2d at 38. Lee was not entitled to summary judgment against Farm Bureau.

### Farm Bureau's Summary Judgment Motion

Our determination that Lee was not entitled to summary judgment reaches the heart of Lee's claims. Not only was he not entitled to summary judgment, his claims are without merit and summary judgment should have been entered against him on his claims against Farm Bureau.

Farm Bureau addressed the pre-November 13, 2000, issue in its brief in support of its summary judgment motion when it argued the application of *Southgate*. It asserted that "[g]iven that defendant Utica National was providing, or attempting to provide, a defense, defendant Farm Bureau did not need to hire separate counsel." Farm Bureau also asserted the propriety of its post-November 13, 2000, conduct in retaining attorney Hursh to defend Lee. It concluded its written argument by asserting that "Plaintiffs are not entitled in that they were provided a defense to the Ramseys' claims." At the November 14, 2002, hearing on its motion, Farm Bureau again argued that it did not breach its duty to defend Lee. Attorney Hasty argued that while he was hired to defend Farm Bureau in the third-party action, attorney Hursh was retained to defend Lee on the claims of the Ramseys.

There was no genuine issue of material fact regarding Farm Bureau's efforts to provide counsel to Lee during the course of this litigation. Farm Bureau was entitled to summary judgment on Lee's claims against it, and the trial court erred in failing to sustain Farm Bureau's motion.

Based on the foregoing, we leave for another day the question raised in Farm Bureau's motion to dismiss whether the trial court

has ongoing jurisdiction to hear Lee's claims once the underlying indemnity issue has been resolved by dismissal of the Ramseys' claims. It suffices to say that having found that Lee's third-party claims against Farm Bureau are without merit, we reverse the grant of summary judgment in favor of Lee and the denial of Farm Bureau's summary judgment motion, and we direct that judgment be entered in favor of Farm Bureau on Lee's claims.

Reversed with directions.