2006 UT App 241

Denis L. GRAY; Milda M. Gray; Tom Hollander; La Canada Crest, Inc.; and Dalton Place Associates, Plaintiffs and Appellants,

v.

OXFORD WORLDWIDE GROUP, INC., a Utah corporation, Defendant and Appellee.

No. 20050665–CA.

Court of Appeals of Utah.

June 15, 2006.

Carvel R. Shaffer and David J. Shaffer, Shaffer Law Office, Bountiful, for Appellants.

Stephen Quesenberry and J. Bryan Quesenberry, Hill Johnson & Schmutz LC, Provo, for Appellee.

Before Judges DAVIS, ORME, and THORNE.

## OPINION

DAVIS, Judge:

¶ 1 Plaintiffs (the Landlords) appeal from a final order ruling that they constructively evicted Defendant (the Tenant), essentially through a course of ethnically charged animus. We affirm.

## BACKGROUND

¶ 2 The Tenant and the Landlords entered into a lease wherein the Tenant agreed to lease certain property (the Premises) from the Landlords for a term of five years, running from October 2000 to September 2005. The Tenant rented the Premises specifically for the purpose of running a language training school that catered primarily to Latino members of the Church of Jesus Christ of Latter-day Saints (LDS Church). However, almost immediately upon entering the Premises, the Tenant began having problems with the Landlords' agent (the Property Manager), wherein the Property Manager exhibited ethnic prejudice against Latinos by refusing to assist the Tenant with ongoing problems on the Premises and by disparaging Latinos in general. As a result, the Tenant tried to avoid contact with the Property Manager.

¶ 3 The relationship between the Tenant and the Property Manager further deteriorated in October 2002, when the Tenant hosted a fiesta on the Premises. Although the Tenant had already received permission from the Landlords to host the fiesta, the Property Manager contacted the Tenant repeatedly before the fiesta to express her opposition thereto. Throughout these conversations, the Property Manager was hostile and uncooperative, and again exhibited her prejudice against Latinos by yelling, swearing, and using ethnic epithets.

¶ 4 In addition to expressing opposition to the fiesta, the Property Manager also voiced her groundless accusation that the Tenant would be serving alcohol at the fiesta. In response, the Tenant's principal, Dr. Joseph Madrigal, assured the Property Manager four days before the fiesta that he, his family, and the vast majority of the school's students were members of the LDS Church and therefore did not drink alcohol; that he had invited many dignitaries such as Governor Michael Leavitt and the Mexican Consul to the fiesta; and that, as a prominent figure in the Latino community and a professor at Brigham Young University, he would not participate in a party that involved drinking, much less underage drinking.

¶ 5 Notwithstanding Dr. Madrigal's assurances, the Property Manager called the police on the day of the fiesta to lodge a complaint regarding underage drinking on the Premises. The arrival of police at the fiesta was extremely disruptive—those who sponsored the fiesta were upset and embarrassed, and many of the students became nervous or hysterical upon seeing the police and left. Students did not come to school on the Monday following the fiesta, and the Tenant vacated the Premises shortly thereafter.

¶ 6 In December 2002, the Landlords sued the Tenant for breach of the lease, seeking unpaid rent. The Tenant counterclaimed for breach of the lease and breach of the covenant of quiet enjoyment, claiming that the Property Manager's actions, chargeable to the Landlords, constituted constructive eviction. After a bench trial, the trial court found that "[b]ecause of Dr. Madrigal's reputation in the community and because [ninety percent] of [the Tenant's] customers are [members of the LDS Church], to have a police officer investigate the fiesta based on an allegation of underage drinking was a

serious blow to [Dr. Madrigal] personally and to [the Tenant]." Based on this and other findings, the trial court believed that "it would have been extremely difficult for [the Tenant] to continue to conduct ... business at the Premises" and, therefore, the Tenant "was justified in vacating the Premises." The trial court ruled that the Tenant had been constructively evicted, and the Landlords timely appealed.

## ISSUES AND STANDARDS OF REVIEW

 ¶ 7 The Landlords challenge the trial court's findings of fact, arguing that the trial court erred in determining that the Landlords' actions were of such a substantial nature and so injurious to the Tenant as to deprive the Tenant of its use of the Premises. The Landlords also argue that the evidence was insufficient to substantiate a determination of constructive eviction. It was the trial court's prerogative to determine whether the Landlords' actions were of such a substantial nature and so injurious to the Tenant as to deprive the Tenant of its use of the Premises. See Thirteenth & Washington Sts. Corp. v. Neslen, 123 Utah 70, 254 P.2d 847, 852 (1953) ("[I]t was peculiarly [the trial court's] prerogative to determine whether the difficulties were sufficient to constitute a constructive eviction of the tenants."). "The trial court having found the facts as it did and [having] concluded that the grievances complained of were sufficient to constitute a constructive eviction causing [the Tenant] to vacate, this court will not reverse it so long as there is substantial evidence to support the findings." Id. "In surveying the evidence to see whether the trial court was justified in holding that there was a constructive eviction, we review it, and every inference fairly arising therefrom in the light most favorable to the [Tenant, because the Tenant] prevailed below." Id. at 849.

 ¶ 8 Because the Landlords are challenging the trial court's findings of fact and the sufficiency of the evidence, they also must marshal the evidence in support of the findings and then demonstrate that, despite this evidence, the trial court's findings are so lacking in support as to be against the clear weight of the evidence. See Chen v. Stewart, 2004 UT 82, ¶ 19, 100 P.3d 1177 (imposing marshaling requirements on appellants challenging findings of fact); 438 Main St. v. Easy Heat, Inc., 2004 UT 72, ¶ 69, 99 P.3d 801 (imposing marshaling requirements on appellants challenging sufficiency of evidence). Where an appellant fails to so marshal the evidence, we assume that all findings are adequately supported by the record, see Chen, 2004 UT 82 at ¶ 19, 100 P.3d 1177, and we need not consider the challenge to the sufficiency of the evidence, see Tanner v. Carter, 2001 UT 18, ¶ 17, 20 P.3d 332.[1]

## ANALYSIS

 ¶ 9 The Landlords marshaled no evidence in support of the trial court's findings of fact, and therefore, we need not address their challenges to the sufficiency of the evidence to support the findings of fact. See Chen, 2004 UT 82 at ¶ 19, 100 P.3d 1177; Tanner, 2001 UT 18 at ¶ 17, 20 P.3d 332. Taking the findings of fact as our starting point, we hold that they readily support a determination of constructive eviction.

 ¶ 10 "Constructive eviction occurs where a tenant's right of possession and enjoyment of the leased premises is interfered with by the landlord, or persons under his control, as to render the premises ... unsuitable for the purposes intended." Brugger v. Fonoti, 645 P.2d 647, 648 (Utah 1982); see also Thirteenth & Washington Sts. Corp. v. Neslen, 123 Utah 70, 254 P.2d 847, 850 (1953) (defining constructive eviction as " 'any disturbance of the tenant's possession by the landlord, or someone acting under his au-

---

1. The Landlords also argue that the findings of fact are not sufficiently detailed to support the trial court's decision. We find no merit to this argument, as the findings of fact here are sufficient to allow "meaningful appellate review." Willey v. Willey, 951 P.2d 226, 230 (Utah 1997); see also Reid v. Mutual of Omaha Ins. Co., 776 P.2d 896, 899 (Utah 1989) (holding trial court's findings of fact were sufficiently detailed because they "reveal[ed] the trial court's reasoning process" and "satisfactorily express[ed] the trial court's ... determination that the noise and other annoyances were not so egregious as to render the premises unsuitable for their intended use, as is required for a claim of constructive eviction").

thority, which renders the premises unfit for occupancy for the purposes for which they were demised'" (citation omitted)). Taking into consideration "the nature and purpose for which the premises were to be used," *Neslen*, 254 P.2d at 852, the interference "'must be of a substantial nature and so injurious as to deprive [the tenant] of the beneficial enjoyment of a part or the whole of the demised premises,'" *id.* at 850 (citation omitted).

¶ 11 In addition, a landlord's interfering act must be done with the intent to deprive the tenant of the enjoyment and occupation of the premises. *See Deseret Fed. Sav. & Loan Ass'n v. United States Fid. & Guar. Co.*, 714 P.2d 1143, 1146 (Utah 1986). However, such intent "may be implied whenever the landlord's conduct substantially deprives the tenant of the use of the premises. The landlord does not have to have an actual subjective intention to compel the tenant to leave; it is enough that his acts or omissions make reasonably necessary the tenant's leaving." *Id.; see also Neslen*, 254 P.2d at 851 (stating intent may be inferred from landlord's acts "whenever his conduct is such that it substantially deprives the tenant of the use of the premises for the purpose for which they were demised"). Finally, to claim constructive eviction, a tenant must abandon the premises within a reasonable time after the alleged interference. *See Brugger*, 645 P.2d at 648.

¶ 12 Here, the trial court did not err in determining that the Landlords' actions were of such a substantial nature and so injurious to the Tenant as to deprive the Tenant of its use of the Premises, and there is more than enough evidence to support the trial court's determination that the Tenant was constructively evicted. The Tenant leased the Premises to run a language training school primarily catering to Latino members of the LDS Church. However, the Property Manager exhibited ethnic prejudice against Latinos by disparaging Latinos in general, using ethnic slurs, and yelling and swearing at the Tenant. Furthermore, the Property Manager called the police to lodge a complaint regarding underage drinking at a fiesta that the Tenant sponsored on the Premises, despite the fact that she had evidence to the contrary. Indeed, the Tenant had obtained permission from the Landlords to have the fiesta, and Dr. Madrigal went to great lengths only four days before the fiesta to assure the Property Manager that no drinking, much less underage drinking, would occur.

¶ 13 The police arrived at the fiesta, embarrassing those who sponsored the fiesta and making many of the students so nervous that they left. The trial court specifically found that, "[b]ecause of Dr. Madrigal's reputation in the community and because [ninety percent] of [the Tenant's] customers are [members of the LDS Church], to have a police officer investigate the fiesta based on an allegation of underage drinking was a serious blow to [Dr. Madrigal] personally and to [the Tenant]." Students did not come to school on the Monday following the fiesta, and the Tenant vacated the Premises shortly thereafter.

¶ 14 Quite simply, the Property Manager interfered with the Tenant's right of possession and enjoyment of the Premises, and that interference was so substantial and injurious that it rendered the Premises unsuitable for use as a school catering to Latino members of the LDS Church. *See Brugger*, 645 P.2d at 648; *Neslen*, 254 P.2d at 850. Furthermore, because the Property Manager's actions deprived the Tenant of the use of the Premises, we may infer that the Landlords' agent acted with the intent required for a determination of constructive eviction. *See Deseret Fed. Sav. & Loan Ass'n*, 714 P.2d at 1146 ("[I]ntent is a necessary element of constructive eviction."). Finally, the Tenant vacated the Premises almost immediately after the police raided the fiesta. *See Brugger*, 645 P.2d at 648 (requiring tenant to abandon premises within reasonable time after alleged interference).[2] Therefore, the trial court did

2. The Tenant also claims it was constructively evicted because the Property Manager failed to assist with parking problems. However, the parking problems occurred as early as October 2000, and the Tenant did not vacate the Premises until October 2002. Therefore, the Tenant cannot now claim constructive eviction based on these problems. *See* 52A C.J.S. *Landlord and*

not err in determining that the Landlords constructively evicted the Tenant.

¶ 15 The Landlords contend that the Property Manager's malicious actions were not so substantial and injurious that they rendered the Premises unsuitable for use as a school catering to Latino members of the LDS Church. While no Utah case has directly addressed this issue, we agree with those jurisdictions that hold that " 'tenants should be protected from insult.' " *Gillingham v. Goldstone*, 21 Misc.2d 690, 197 N.Y.S.2d 237, 238 (1959) (citation omitted). Therefore, "[w]here the landlord's conduct is 'so grossly insulting and threatening in character as to seriously and substantially deprive the [tenant] of the beneficial enjoyment of the premises demised,' and as a result, the tenant is forced to vacate the premises, there may be a constructive eviction." *Id.* (citation omitted); *see also Tenn–Tex Props. v. Brownell–Electro, Inc.*, 778 S.W.2d 423, 428 (Tenn.1989) (holding landlord's "strident and assertive" demands constituted constructive eviction); *cf. Johnson v. Northpointe Apts.*, 744 So.2d 899, 902 (Ala.1999) (holding interference with tenant's access to apartment "by threats or other forms of intimidation" subjected landlord to liability for breach of implied covenant of quiet enjoyment); *Chapman v. Brokaw*, 225 Ill.App.3d 662, 167 Ill.Dec. 821, 588 N.E.2d 462, 467 (1992) (affirming breach of covenant of quiet enjoyment where landlords "pounded on [tenants'] door, harassed them by phone, [and] circled the property in their car"); *Mauro v. Division of Hous. & Cmty. Renewal*, 309 A.D.2d 678, 765 N.Y.S.2d 868, 869 (2003) (affirming determination of harassment and concomitant fine where landlord called tenant and her boyfriend "liars and con artists"); *Nikzad v. P & H Invs.*, 36 Va. Cir. 132, 133 (Cir.Ct.1995) (stating warranty of quiet enjoyment "includes protection of the tenant against the landlord" and upholding breach of warranty where landlord and its agents "intimidated [tenant] and his employees by yelling and screaming at them"). We therefore believe that the Property Manager's malicious actions were so substantial and injurious that they rendered the Premises unsuitable for use as a school serving Latino members of the LDS Church.

## CONCLUSION

¶ 16 We conclude that the trial court did not err in determining that the Landlords' actions were of such a substantial nature and so injurious to the Tenant as to deprive the Tenant of its use of the Premises, and there is more than enough evidence to support the trial court's determination that the Tenant was constructively evicted.

¶ 17 Affirmed.

¶ 18 WE CONCUR: GREGORY K. ORME and WILLIAM A. THORNE JR., Judges.

*Tenant* § 970 (2003) ("Since there can be no constructive eviction without a surrender of possession by the tenant, a tenant who continues to occupy the premises for an unreasonable length of time after the acts or omissions that constitute a constructive eviction waives the eviction, and may not thereafter abandon the premises and assert it." (footnotes omitted)).