**NATIONAL FARMERS UNION PROPERTY AND CASUALTY COMPANY, Plaintiff and Appellant,**

v.

**WESTERN CASUALTY AND SURETY COMPANY, Defendant and Respondent.**

**No. 15317.**

Supreme Court of Utah.

March 31, 1978.

D. Gary Christian and James R. Blakesley, of Kipp & Christian, Salt Lake City, for plaintiff and appellant.

Glenn C. Hanni and R. Scott Williams of Strong & Hanni, Salt Lake City, for defendant and respondent.

MAUGHAN, Justice:

Plaintiff insurer initiated this action seeking contribution from defendant insurer as a co-insurer.[1] Both parties moved for summary judgment, defendant's motion was granted. Plaintiff appeals seeking judgment in its favor. The judgment of the trial court is affirmed.

---

1. Allegedly, each had issued a liability policy which insured the same party, upon the same subject matter, and assumed the same risk. 8

Appleman, Insurance Law and Practice, § 4911, p. 378.

Plaintiff issued a liability policy covering the Weber County Sheriffs Mounted Posse, on their drill grounds. The policy provided under the liability provision:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto. . . .

Brent G. Story, Captain of the Sheriff's Posse, as an executive officer, was an insured under plaintiff's policy. Captain Story was also an insured under his homeowner's policy, which was issued by defendant. This policy provided:

> This Company agrees to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence. . . .

Defendant's homeowner's policy excluded coverage for personal liability by specific exclusion 1(e), which provided:

> This policy does not apply:
>
> \*   \*   \*   \*   \*   \*
>
> (e) to bodily injury or property damages arising out of any premises, other than an insured premises, owned, rented, or controlled by any insured. . . .

Plaintiff alleged that on June 15, 1972, the Sheriffs Mounted Posse of Weber County was conducting a practice drill on its grounds near Harrisville in Weber County. Prior to, during, and after the drill the main gate from the posse grounds to the highway was left open. Brent G. Story, as Captain of the posse, knew or should have known the gate was left open from the time the first posse member entered, until after the last posse member left. Plaintiff further alleged Brent G. Story, as Captain, was negligent in his failure to supervise the activities of the posse members on the grounds of the organization and was negligent in his failure to close the main gate or see to it the gate was closed during drills, so horses could not escape from the posse grounds.

At approximately 9:30 p. m. while some of the members of the posse were still drilling, a horse owned by one Cheney, escaped from the grounds, by running through the open gate and onto the highway.

It was there struck by a vehicle in which Arthur E. Haggen, Jr. was a passenger. Mr. Haggen sustained serious, permanent injuries, and he filed an action, including as defendants, Cheney, Story, and the Posse.

After the answers of the defendants had been filed and some discovery undertaken, plaintiff, as the liability insurance carrier for the posse settled the case. Before settling, plaintiff sought contribution from the insurance carriers of the other defendants. The carrier for Cheney, the owner of the horse, contributed 25 percent of the settlement. Defendant, the homeowner's (Story's) insurance carrier refused contribution, and in the instant action plaintiff seeks contribution in an amount proportionate to the total coverage of the companies to the total settlement made, viz., 25 percent.

Defendant denies liability under the homeowner's policy on the ground the exclusion 1(e) is applicable, viz., the policy does not apply to bodily injury arising out of any premises, owned, controlled or rented by the insured, Story, other than the insured premises (Story's home). Both parties agree that the posse's property, where the drill was conducted, was not an insured premises under defendant's policy. Their point of contention is whether there was "an injury arising out of any premises"; so that the exclusion is applicable rather than the general liability provision.

Plaintiff contends the incident—the horse-automobile collision—did not arise out of any premises, but occurred strictly by the negligent manner in which Story controlled the posse. In other words, there was no causal nexus between the accident and Story's control, if any, over the property. The accident can be attributed solely to Story's failure to control the posse.

Defendant responds that the injury involved was the result or occurred, because of a condition of the uninsured premises—an open gate. For the exclusion to apply all that is required is some causal connection between the condition of the uninsured premises and the injuries involved. Defendant contends that if there be any liability, it was because of Story's failure to close the gate at the drill grounds through which the horse escaped. Plaintiff so recognized the open gate as the basis of Story's liability in the allegations in its complaint.

The term 'arising out of' is ordinarily understood to mean originating from, incident to, or connected with the item in question.[2]

. . . As used in a liability insurance policy, the words 'arising out of' are very broad, general and comprehensive. They are commonly understood to mean originating from, growing out of, or flowing from, and require only that there be some causal relationship between the injury and the risk for which coverage is provided.[3]

The clause has frequently been interpreted in automobile liability policies. The words import a concept of causation; there must be a causal nexus between an accident or injury and the ownership, maintenance or use of a vehicle.[4]

The principle is illustrated in *Hartford Accident and Indemnity Company v. Civil Service Employees Insurance Company*.[5]

The concept of loss *arising out of* the use of an insured vehicle 'imports some kind of sequential relationship between the vehicle and the accident. The decisions posit varying descriptions of this relationship. One is that the vehicle need not be the proximate cause of the injury in the legal sense, but "the events giving rise to the claim must arise out of, and be related to, its use." Another is that the injury be a "natural and reasonable incident or consequence of the use of the [automobile] for the purposes shown by the declarations . . . [and not] directly caused by some independent act or intervening cause wholly disassociated from, independent of and remote from the use of the [automobile]." The phrase "arising out of" is equated with origination, growth or flow from the event.' [Citations.]

\* \* \* \* \* \*

. . . 'arising out of' is a phrase of much broader significance than 'caused by' and is ordinarily understood to mean 'incident to, or having connection with' the use of the car.[6]

*Jackson v. Lajuanie*[7] has a strong similarity to the instant action. Jackson, while a customer in a gasoline service station operated by defendant, Lajuanie, suffered a serious gunshot wound in the chest. A pistol belonging to an employee of defendant was in the station. Lajuanie, believing the pistol to be loaded with blanks, fired it at plaintiff as a prank.

Lajuanie had a liability policy covering the garage premises. He also had a homeowner's policy, and one of the issues before the court was whether an exclusionary clause of the homeowner's policy precluded coverage for this accident. The homeowner's policy did not apply:

(3) to any act or omission in connection with the premises, other than as defined, [the defined premises being Lajuanie's home, and not the service station] which are owned, rented or controlled by an Insured, . . . .

2. *Rouse v. Greyhound Rent-A-Car, Inc.* (U.S. C.A. 5th, 1975) 506 F.2d 410, 414.

3. *Lawver v. Boling*, 71 Wis.2d 408, 238 N.W.2d 514, 518 (1976).

4. *Vanguard Insurance Co. v. Cantrell*, 18 Ariz. App. 486, 503 P.2d 962 (1973); also see *Baca v. New Mexico State Highway Department*, 82 N.M. 689, 486 P.2d 625 (1971).

5. 33 Cal.App.3d 26, 32, 108 Cal.Rptr. 737, 741 (1973).

6. Also see 12 Couch On Insurance 2d, § 45:56, pp. 146–147; § 45:61, pp. 150–151.

7. 270 So.2d 859 (La.1972).

The court observed the homeowner's policy did not apply to any act in connection with any premises, except the home, which are owned, rented, or controlled by Lajuanie. Therefore, the homeowner's insurance carrier argued that if Jackson were injured by an act "in connection with" the service station, exclusion (a)(3) was applicable and the insurance carrier was not responsible. The court stated:

.   .   . Then follows exclusion (a)(3) which makes the policy inapplicable to *any act,* whether a business pursuit or a nonbusiness pursuit, done *in connection with* the service station. It cannot be said that the prank had no connection with the station. It happened at the station. The parties were present because of the station—one to sell and the other to buy gasoline. The gun was present because of the station; an employee had brought it there for protection because of a rumored invasion of motorcycle toughs. This tragic prank was linked to the station, associated with the station, related to the station and, in the absence of a new and restrictive definition of an old and well understood word, connected with the station. Therefore, Continental's homeowners policy does not afford coverage for this accident.

The active force leading to injury in plaintiff's complaint was an escaping horse. The term "escape" connotes a removal from a geographical location caused by a loss of control by the one responsible for confinement. To confine the animal to the drill field, there was an enclosure around the uninsured premises. Captain Story's alleged negligence was his failure to close the gate and thus prevent the escape. The alleged acts arose from, originated, and were connected with the uninsured premises, and the exclusion in his homeowner's policy was applicable.

Since defendant's policy did not cover the risk involved, the other points raised by plaintiff are moot.

ELLETT, C. J., and CROCKETT, WILKINS and HALL, JJ., concur.