VIKING INSURANCE COMPANY OF WISCONSIN, Plaintiff and Appellee,

v.

Allen COLEMAN, Trans Coastal Trucking, Rene B. Peterson, and Utah Department of Transportation, Defendants and Appellants.

No. 960278–CA.

Court of Appeals of Utah.

Nov. 7, 1996.

Barbara K. Berrett, Robert G. Gilchrist, Richards, Brandt, Miller and Nelson, Salt Lake City, and Taylor D. Carr, Salt Lake City, for Defendants and Appellants.

Bradley R. Helsten and Terry M. Plant, Hanson, Epperson & Smith, Salt Lake City, for Plaintiff and Appellee.

Before BILLINGS, GREENWOOD, and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Viking Insurance Co. (Viking) filed a declaratory judgment action against Allen Coleman (Coleman), Trans Coastal Trucking (Trans Coastal), Rene Peterson (Peterson), and the Utah Department of Transportation (UDOT), seeking a determination that an accident did not trigger automobile liability coverage. The trial court granted Viking's subsequent motion for summary judgment. We reverse.

## BACKGROUND

The facts of this case are not in dispute. Coleman was the named insured under an automobile liability policy issued by Viking. The Viking policy provides the following coverage:

> We promise to pay *damages,* within the limits of our policy, for bodily injury or property damage for which the law holds *you* responsible because of a *car accident* involving a *car* we insure.

The policy defines "Car Accident" as "an unexpected and unintended event that causes bodily injury or property damage and arises out of the ownership, maintenance or use of a *car.*"

On January 7, 1994, Coleman had mechanical problems with the insured automobile, a 1994 Oldsmobile Omega. While Coleman was driving to work, the Omega's carburetor caught fire. Coleman attempted to drive the car back to his home in Magna, Utah, to repair it, but it stopped running. Coleman steered the car off the right side of the 2100 South freeway and exited the car. Believing that the problem was a defective thermostat housing and that he could make the repairs himself, Coleman crossed the westbound, two-lane roadway, the median, and the eastbound, two-lane roadway of the 2100 South freeway. Coleman then scrambled over the fence bordering the roadway and used a phone at a nearby gas station to order a replacement part from an auto repair store. Following the same route, Coleman returned to his car to await delivery of the part.

Coleman waited approximately ninety minutes for the auto repair store to deliver the replacement part. In frustration, Coleman, by the same route, returned to the pay phone at the gas station to inquire about the part delivery. Heading back to his car, Coleman was crossing the eastbound lanes of traffic when he stumbled on the uneven roadway surface and injured his right knee. Because he had both a fused left knee and now an injured right knee, Coleman was unable to remove himself from the roadway.

At the time Coleman fell, Peterson was driving a semi tractor-trailer, owned by Trans Coastal, eastbound on the 2100 South freeway. Upon seeing Coleman in the roadway, Peterson attempted to avoid hitting him, and the truck rolled over into the median. As a result, Peterson was injured, the Trans Coastal tractor-trailer was destroyed and UDOT property was damaged.

On December 20, 1994, Viking filed a declaratory judgment action against Coleman, Trans Coastal, Peterson and UDOT seeking a determination that the accident did not arise out of "the ownership, maintenance or

use" of a car so as to trigger automobile liability coverage. On May 9, 1995, Viking filed a motion for summary judgment on this issue. Trans Coastal then filed a cross-motion for summary judgment that was joined by Coleman and Peterson. The trial court granted Viking's motion for summary judgment and denied the cross-motions for summary judgment.

Trans Coastal and Coleman subsequently filed a notice of appeal. UDOT and Peterson did not join in this appeal.

## ISSUE ON APPEAL

Coleman and Trans Coastal raise the following issue on appeal: Did the trial court err in granting Viking's motion for summary judgment based on its conclusion that, as a matter of law, under the terms of Viking's insurance policy, the accident at issue did not arise out of the "ownership, maintenance or use" of an insured vehicle?

## STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c). Interpretation of an insurance contract presents a question of law. *See AOK Lands, Inc. v. Shand, Morahan & Co.*, 860 P.2d 924, 925 (Utah 1993). This court should thus, "accord the trial court's legal conclusions regarding the contract no deference but review them for correctness." *Id.*

## ANALYSIS

### Coverage Under Viking's Policy

Coleman and Trans Coastal argue that the accident at issue arose out of Coleman's "ownership, maintenance or use" of the insured vehicle. We agree.

Viking's insurance policy provides that it will pay for damages arising out of "a *car accident* involving a *car* we insure." The policy defines a "Car Accident" as "an unexpected and unintended event that ... arises out of the ownership, maintenance or use of a *car.*" We first address the definition of "arises out of."

Utah courts have not specifically addressed whether facts similar to those at issue in this case, involve "an accident arising out of the ownership, maintenance or use" of a car. However, the Utah Supreme Court has broadly interpreted the term "arising out of" in the context of a homeowner's insurance policy in *National Farmers Union Property & Casualty Co. v. Western Casualty & Surety Co.*, 577 P.2d 961 (Utah 1978). In defining the term "arising out of," the *National Farmers* court considered the interpretation of the term in the context of both automobile liability policies and homeowner's policies. *Id.* at 963. In fashioning a broad definition, the court cited the following language from other jurisdictions:

> "the term 'arising out of' is ordinarily understood to mean originating from, incident to, or in connection with the item in question."

> "... As used in a liability insurance policy, the words 'arising out of' are very broad, general and comprehensive. They are commonly understood to mean originating from, growing out of, or flowing from, and require only that there be some causal relationship between the injury and the risk for which coverage is provided."

*Id.* (citations and footnotes omitted).

Additionally, the *National Farmers* court noted, "[t]he clause has frequently been interpreted in automobile liability policies. The words import a concept of causation; there must be a causal nexus between an accident or injury and the ownership, maintenance or use of a vehicle." *Id.* (citing *Vanguard Ins. Co. v. Cantrell*, 18 Ariz.App. 486, 503 P.2d 962, 964 (1972)); *see also Hartford Accident & Indem. Co. v. United States Fidelity & Guar. Co.*, 962 F.2d 1484, 1491 (10th Cir.), *cert. denied*, 506 U.S. 955, 113 S.Ct. 411, 121 L.Ed.2d 335 (1992); *Baca v. New Mexico State Highway Dep't*, 82 N.M. 689, 486 P.2d 625, 628 (App.1971) ("The words 'arising out of' are very broad, general and comprehensive terms, ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or flowing from.'"). The *National Farmers* court further stated, it "is a phrase of much broader significance than

'caused by' and is ordinarily understood to mean 'incident to, or having connection with' the use of the car." *National Farmers,* 577 P.2d at 963 (quoting *Hartford Accident & Indem. Co. v. Civil Serv. Employees Ins. Co.,* 33 Cal.App.3d 26, 108 Cal.Rptr. 737, 741 (1973)). *See also* 12 Couch on Insurance §§ 45:56, 45:61 (2d ed. 1981). Although some of the above statements may be dicta as applied to an automobile insurance policy, the *National Farmers* court's intention is clear. The term "arising out of" should be broadly interpreted in favor of coverage not only in the context of homeowner's insurance, but also automobile liability insurance in order *"'to accomplish the purpose for which the insurance was taken out and for which the premium was paid.'"* *United States Fidelity & Guar. Co. v. Sandt,* 854 P.2d 519, 522 (Utah 1993) (court's emphasis) (quoting *Browning v. Equitable Life Assur. Soc.,* 94 Utah 532, 562, 72 P.2d 1060, 1073 (1937)).

■ Thus, there must be a "causal nexus" between Coleman's accident and his ownership, maintenance or use of the vehicle in order to trigger automobile liability coverage. The causal nexus requirement is more than "but-for" causation, but less than legal, proximate cause. *See Hawkeye–Security Ins. Co. v. Gilbert,* 124 Idaho 953, 866 P.2d 976, 980 (App.1994) ("It is not enough to say that 'but for' the use of the automobile, the injury would not have occurred."); *Barry v. Illinois Farmers Ins. Co.,* 386 N.W.2d 299, 301 (Minn.App.1986) ("[A] causal connection is less than proximate cause and is established if the injury is a natural and reasonable consequence of the use of the vehicle."); *Kolkin v. American Family Ins. Co.,* 347 N.W.2d 538, 540 (Minn.App.1984) (explaining "'causal connection' is less than proximate cause but more than the vehicle being the 'mere situs' of the injury") (citations omitted); *Nationwide Mut. Ins. Co. v. Davis,* 118 N.C.App. 494, 455 S.E.2d 892, 894–95 (construing "arising out of" liberally to mean causal connection between use of vehicle and accident and not proximate cause), *review denied,* 341 N.C. 420, 461 S.E.2d 759 (1995). *But cf. Eichelberger v. Warner,* 290 Pa.Super. 269, 434 A.2d 747, 749 (1981) ("'"[A]rising out of," means causally connected with, not proximately caused by. "But for" causa-

tion, i.e., a cause and result relationship, is enough to satisfy this provision of the policy.'") (quoting *Manufacturers Casualty Ins. Co. v. Goodville Mut. Casualty Co.,* 403 Pa. 603, 170 A.2d 571, 573 (1961)).

Although Utah appellate courts have never considered whether facts similar to those at issue could be considered to "arise[ ] out of the ownership, maintenance or use of a *car "* for purposes of automobile insurance benefits, other jurisdictions have. For example, in *Eichelberger,* the court concluded that an insured was covered under her automobile insurance policy when, while standing at the rear of her automobile, she was struck by an oncoming car. *Eichelberger,* 434 A.2d at 750. After the insured's car ran out of gas, she parked it off the roadside and walked to a gas station for a can of gas. *Id.* at 748–49. Shortly after the insured returned to her vehicle, two "good samaritans" stopped to lend assistance. *Id.* at 749. While the "good samaritans" were refueling the gas tank, a car, traveling in the direction of the stalled vehicle, approached the group. *Id.* At that moment, the insured inadvertently stepped into the roadway. *Id.* In swerving to avoid hitting the insured, the driver of the oncoming car lost control of her automobile killing the insured and seriously injuring both "good samaritans." *Id.*

Similar to Viking's policy, the automobile liability policy in *Eichelberger* provided coverage for damages "arising out of the ownership, maintenance or use of the owned automobile or any nonowned automobile." *Id.* The *Eichelberger* court broadly construed "arising out of" and held that a "cause and result relationship is enough to satisfy the 'arising out of' provision of an automobile insurance policy." *Id.* at 750. The court formulated this cause and result relationship as, "had not the ... vehicle run out of fuel [the insured] would not have been standing on the highway waiting while [the good samaritans] poured gasoline into her car." *Id.*

While the *Eichelberger* court adopted a but-for test, we believe that even under the more stringent causal connection test adopted herein, the accident at issue in *Eichelberger* would be considered to arise out

of the maintenance, ownership or use of an insured vehicle, triggering automobile liability coverage.

Other jurisdictions have applied the causal connection test and concluded that even though the insured was not in close proximity to the vehicle, the insured was entitled to automobile liability coverage. For example, in *Aetna Casualty & Surety Co. v. McMichael*, 906 P.2d 92 (Colo.1995), the court held that proximity was not dispositive in finding that underinsured motorist coverage applied to an employee using his employer's truck. *Id.* at 103. After parking his employer's truck in the center median, the employee turned on the truck's overhead beacon and emergency flashers, removed a concrete saw, and started working on a concrete joist, seventy-five feet in front of the truck, when an oncoming car struck him. *Id.* at 94, 106. In concluding that the employee was "using the truck in a manner not foreign to its inherent purpose at the time of the accident," the *McMichael* court noted that the truck was equipped with devices to alert traffic of roadwork in progress, the truck was commonly used as a barricade to protect road workers, and the safety devices were activated. *Id.* at 103.

We recognize that although the insurance clause at issue in *McMichael* is substantially similar to Viking's, the *McMichael* case is factually different from the instant case. Nonetheless, the *McMichael* court stated, "the causation test does not require that the insured vehicle itself be the source of the injury, only that the use be integrally related to the claimant's activities and the injury at the time of the accident." *Id.* Significantly, the *McMichael* court explained that the truck was not merely the situs of the accident, but the employee's use of the truck was "integrally related" to the accident. *Id.* at 104.

The determination of whether there is a causal nexus between the accident and the ownership, maintenance or use of an insured automobile is fact sensitive. *See id.* at 102. We therefore examine the facts of this case, doing so in a light most favorable to Coleman and Trans Coastal, the parties resisting summary judgment.

In this case, as in *Eichelberger*, the insured, Coleman, pulled off the freeway solely because his car stopped running. Coleman then exited the vehicle, surveyed the problem and believed he could make the necessary repairs. This decision to repair his car was the single factor which motivated Coleman's subsequent action. Thus, had Coleman's vehicle not stopped running, Coleman would not have crossed the freeway to arrange to repair his car. Coleman was continually in the process of trying to repair his vehicle from the moment he pulled off the roadside until the accident. The intervening events—crossing the roadway, contacting the auto repair store, returning to his car to await the part delivery, and retracing his steps across the roadway to inquire about the part delivery—were "integrally related" to Coleman's "ownership, maintenance or use" of his vehicle. *Cf. McMichael*, 906 P.2d at 103–04. It cannot be said that Coleman's negligent act of jaywalking was so remote from the ownership, maintenance or use of his vehicle "as to have no nexus with it." *Cf. Eichelberger*, 434 A.2d at 750.

■ Moreover, though Coleman was some distance from his car at the time of the accident, proximity "is only one factor to be weighed as part of the totality of the circumstances present in the case." *McMichael*, 906 P.2d at 103. Accordingly, because the facts of this case indicate that there is a causal nexus between the accident and Coleman's "ownership, maintenance or use" of his vehicle, there is coverage under Viking's policy.

## CONCLUSION

The trial court erred in granting Viking summary judgment. There is a causal nexus between Coleman's accident and his "ownership, maintenance or use" of his vehicle. The only reason Coleman crossed the 2100 South freeway was to attempt to repair his insured vehicle. From the moment the Omega stopped running until his accident, Coleman was engaged in maintaining his car. Thus, there was a causal nexus between the acci-

dent and Coleman's "ownership, maintenance or use" of his vehicle.

Accordingly, we reverse and remand.

BILLINGS and JACKSON, JJ., concur.