**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 15, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ALEJANDRA JUAREZ,

      Plaintiff - Appellant,

v.

HUDSON SPECIALTY INSURANCE
COMPANY,

      Defendant - Appellee.

No. 23-4101
(D.C. No. 2:22-CV-00740-RJS)
(D. Utah)

_____

**ORDER AND JUDGMENT***
_____

Before **PHILLIPS**, **KELLY**, and **MORITZ**, Circuit Judges.
_____

Alejandra Juarez was punched in the parking lot of a nightclub (owned

and operated by Quantum Ultra Lounge, Inc.) by a male assailant who had been

overserved alcohol. Juarez sued Quantum in state court under Utah's dramshop

statute, which in certain circumstances establishes liability for injuries caused

by the distribution of alcohol. After Quantum tendered its defense to its insurer,

Hudson Specialty Insurance Co., Hudson refused to defend, relying on a policy

endorsement excluding coverage for claims "arising out of" assault and battery.

---

    * This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be
cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

Though Juarez's claim against Quantum had asserted a violation of Utah's dramshop statute, Hudson maintained that the dramshop claim was one "arising out of" an assault and battery. To protect itself from execution of an unfavorable judgment in Juarez's lawsuit, Quantum assigned to Juarez its contract claims against Hudson for Hudson's refusing to defend Quantum against Juarez's lawsuit.

Then, proceeding as Quantum's assignee, Juarez filed a second state-court suit, this time asserting against Hudson her assigned contract claims from Quantum. Juarez asserted that Hudson had breached its contractual duties to Quantum by refusing to defend Quantum against Juarez's state-court dramshop claim. After removing the case to federal district court, Hudson moved to dismiss Juarez's assigned contract claims. Guided by Utah's broad construction of "arising out of" in insurance policies, the district court held that Hudson's policy excluded any claim sharing a causal relationship or nexus with an assault or battery, including Juarez's dramshop claim. Because Juarez's dramshop claim was premised on the underlying assault and battery, the court ruled that Juarez had failed to allege a plausible claim for relief and granted Hudson's motion to dismiss. In doing so, the court likewise rejected Juarez's assertion that the policy's assault-and-battery exclusion applied exclusively to Quantum and its employees. Juarez appealed. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

### I.     Factual Background

The facts below are drawn from the complaint in this action, which facts we take as true at the motion-to-dismiss stage. *See Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

#### A.     The Assault and Battery

In 2017, Juarez attended a Quantum-owned nightclub with female friends in Salt Lake City, Utah. While there, Juarez and her friends were verbally and physically harassed by a visibly intoxicated patron, Rocky Manatau. Despite the women reporting this to the nightclub's manager, the nightclub did not remove Manatau and continued to serve him alcohol. So Juarez and her friends left, but Manatau followed them out of the nightclub and into the parking lot. There, he struck Juarez in the face with his fist, causing extensive facial and dental injuries and necessitating multiple reconstructive surgeries.

#### B.     The Insurance Policy

In 2017, Quantum had a liquor-liability insurance policy with Hudson. The policy covers Quantum as the "insured" and the nightclub as the "insured premises" for liability arising from "the selling, serving or giving of any alcoholic beverage at or from the insured premises."[1] App. vol. I, at 8 ¶ 19.a.

---

[1] Quantum held a general liability insurance policy with a different carrier, United Specialty Insurance Co., that excluded coverage for liquor liability. Quantum settled a declaratory judgment action with United Specialty,

(*footnote continued*)

3

The policy requires Hudson "to defend any suit against the insured seeking such damages." *Id.* at ¶ 19.b. But, pertinent here, the policy also contains an "Assault & Battery Exclusion – Absolute" (A&B Exclusion), which reads as follows:

> This insurance does not apply to claims arising out of an assault and/or battery, whether caused by or at the instigation of, or at the direction of, or omission by, the insured, and/or his employees.

*Id.* at 42 ¶ 6.

### C.    The State-Court Complaint and Tendered Defense

In her first state-court lawsuit, Juarez sued Quantum in Utah alleging claims for negligence, negligent hiring and retention, and violation of Utah's dramshop statute, Utah Code Ann. § 32B-15-201. The state court later dismissed Juarez's two negligence claims as preempted by the dramshop statute.[2] *See Gilger v. Hernandez*, 997 P.2d 305, 310 (Utah 2000) (concluding that in Utah, "the common law of negligence is preempted insofar as it may impose liability for acts that the Dramshop Act reaches").

Juarez's complaint alleged that "[d]espite [Manatau's] visibly and apparently intoxicated condition" the nightclub continued to serve him alcohol

---

agreeing that United Specialty had no duty to defend or indemnify Quantum for liquor-related liability.

[2] So Juarez's sole remaining claim against Quantum was statutory and not based on common-law negligence. This makes her case different than others cited in her brief which allege negligence-based claims, like *Desrosiers v. Hudson Specialty Ins. Co.*, 438 F. App'x 629, 631 (9th Cir. 2011).

and that "[a]s a direct and proximate result of serving intoxicating alcoholic products to Rocky Manatau, [Juarez] was severely injured, suffering economic and non-economic damages." App. vol. I, at 54 ¶ 38, 55 ¶ 44.

Quantum tendered defense of Juarez's lawsuit to Hudson. But Hudson refused to defend, relying on the liquor-liability policy's A&B Exclusion. Ahead of mediation with Juarez, Quantum emailed Hudson requesting its participation in the mediation and cautioning that "[i]f Hudson maintains its denial of coverage and does not participate in the mediation, Quantum has the right under Utah law to take steps to limit its potential exposure." *Id.* at 11 ¶ 25. Hudson maintained its position that it had no duty to defend Quantum because Juarez's claim fit squarely within the A&B Exclusion. Despite another round of emails between Quantum and Hudson, Hudson remained adamant in its position. During mediation, believing that Hudson's denial left it defenseless against a potentially large judgment, Quantum agreed to a consent judgment with Juarez as described below.

**D.    The Consent Judgment**

The consent judgment between Quantum and Juarez achieved three things: (1) entry of judgment against Quantum for the statutory maximum ($1,000,000) for violating Utah's dramshop statute;[3] (2) Juarez's agreement not to execute the judgment against Quantum; and (3) Quantum's assignment of its

---

[3] Utah Code Ann. § 32B-15-301(2) limits the amount recoverable by a prevailing plaintiff to $1,000,000.

contractual rights against Hudson to Juarez. The consent judgment also noted Quantum's belief that it had suffered damages and attorneys' fees due to Hudson's refusal to defend and indemnify.

## II.    Procedural History

In her second lawsuit, Juarez sued Hudson in Utah state court, asserting three contract claims assigned to her by Quantum: (1) breach of contract; (2) tortious breach of the implied covenant of good faith and fair dealing/breach of fiduciary duty; and (3) coverage by estoppel. Juarez attached the insurance policy to her complaint. Hudson removed the case to federal district court and moved to dismiss Juarez's claims under Federal Rule of Civil Procedure 12(b)(6).

This appeal primarily challenges the federal district court's ruling that Juarez's contract claims against Hudson did not state plausible claims for relief, because the A&B Exclusion defeated coverage of Juarez's dramshop claim against Quantum. That being so, Hudson had no duty to defend Quantum. In the district court, Hudson maintained that the A&B Exclusion "unambiguously barred coverage" of Juarez's dramshop claim and that even "accepting the facts pled in the complaint as true, Juarez ha[d] not met her burden to show that the underlying [dramshop] claim[] w[as] covered by the policy." App. vol. II, at 46. So Hudson argued that it was "under no obligation to defend or indemnify" Quantum—meaning that Quantum (and Juarez as assignee) had no valid contract claims. *Id.* Juarez disagreed, arguing that the

6

exclusion was limited to assaults and batteries committed by Quantum and its employees, or alternatively was ambiguous on that point. So, in Juarez's view, her claim was at least "potentially covered" by the policy, which meant that Hudson had breached its duty to defend Quantum. *Id.*

After considering the parties' written and oral arguments, the court ruled from the bench that Juarez's assigned contract claims against Hudson were implausible on their face because Juarez's dramshop claim "fell squarely within the [A&B Exclusion]," so Hudson could deny coverage and not defend Juarez's suit against Quantum. *Id.* at 50. The court reasoned that "[t]he pleaded facts taken as true show that Juarez's [assigned] claims cannot succeed because the [A&B Exclusion] bar[s] coverage for the underlying [dramshop] claim[] in the state case. *Id.* "[A]nd because Juarez's [assigned] claims . . . are based on Hudson's unlawful denial of coverage in the state case and the pleaded facts show Hudson properly denied coverage," the court ruled that "Juarez is unable to maintain her [assigned] claims." *Id.* at 52. On this basis, the court granted Hudson's motion to dismiss Juarez's assigned contract claims and entered judgment in its favor.

Juarez timely appealed.

## STANDARD OF REVIEW AND APPLICABLE LAW

We review de novo a district court's grant of a Rule 12(b)(6) motion to dismiss. *E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1280 (10th Cir. 2023). "To survive a motion to dismiss, a complaint must contain sufficient factual

7

matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (cleaned up).

In making our Rule 12(b)(6) assessment in this diversity suit, the parties agree that we apply substantive Utah law. *See Carolina Cas. Ins. Co. v. Nanodetex Corp.*, 733 F.3d 1018, 1022 (10th Cir. 2013) (applying the state law that both parties agreed governed).

Under Utah law we interpret insurance policies, like other contracts, to ascertain and effectuate the parties' intention as expressed by the plain language of the policy. *Headwaters Res., Inc. v. Illinois Union Ins. Co.*, 770 F.3d 885, 891 (10th Cir. 2014) (applying Utah law); *S.W. Energy Corp. v. Cont'l Ins. Co.*, 974 P.2d 1239, 1242 (Utah 1999). If the contract terms are ambiguous, we construe those terms in favor of the insured. *Dyno Nobel v. Steadfast Ins. Co.*, 85 F.4th 1018, 1026 (10th Cir. 2023) (applying Utah law). But we must be careful to avoid straining to create an ambiguity where none exists. *See Compton v. Houston Cas. Co.*, 393 P.3d 305, 310 (Utah 2017) ("An ambiguity exists when a provision is capable of more than one *reasonable* interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." (internal quotation marks omitted)); *Headwaters Res.*,

8

770 F.3d at 892 ("[I]t is important to remember, a policy provision is not ambiguous simply because the parties ascribe different meanings to it according to their own interests."). After all, ambiguity exists only where the meaning is genuinely uncertain after we give a "plausible and reasonable" construction "in light of the language used." *S.W. Energy Corp.*, 974 P.2d at 1242 (citation omitted). There is no ambiguity if we can ascertain the parties' intention from the plain language, and so we apply the policy language as written. *BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1201 (10th Cir. 2016) (applying Utah law).

**DISCUSSION**

One question underlies this appeal: Does the A&B Exclusion exclude coverage of Juarez's dramshop claim against Quantum? The district court answered this question "yes," holding that Hudson legally declined Quantum's tender of defense, because the A&B Exclusion eliminates any potential coverage for Juarez's dramshop claim. With no potential policy coverage because of the A&B Exclusion, the court deemed Juarez's assigned contract claims against Hudson implausible. Contesting this, Juarez asserts (1) that the district court erred by considering the policy exclusion's applicability at the motion-to-dismiss stage and (2) that the district court erred by not finding the A&B Exclusion unambiguous in her favor, or alternatively, ambiguous. We address Juarez's arguments on appeal in turn.

I.      **The district court did not err by considering the A&B Exclusion's applicability to Juarez's dramshop claim in ruling on Hudson's motion to dismiss Juarez's assigned contract claims.**

Juarez alleges that the district court improperly reached the merits of her assigned contract claims against Hudson at the motion-to-dismiss stage instead of evaluating their plausibility. In Juarez's view, the district court erred in considering the applicability of the A&B Exclusion to her dramshop claim because that analysis, she says, goes to the "merits." Op. Br. at 20–21. We disagree.

Underpinning Juarez's assigned contract claims against Hudson is the issue of whether the policy's A&B Exclusion excused Hudson from its duty to defend Quantum against Juarez's dramshop claim. In her second lawsuit, Juarez's complaint against Hudson (alleging the three assigned contract claims) cannot state a plausible claim for relief—the standard to survive a motion to dismiss—if the A&B Exclusion excludes coverage of Juarez's dramshop claim against Quantum. And if the policy excludes coverage for Juarez's dramshop claim, Hudson would have justifiably denied Quantum's tender of defense— rendering Quantum's (and Juarez's by assignment) contract claims against Hudson implausible. *See Summerhaze Co. v. Fed. Deposit Ins. Corp.*, 332 P.3d 908, 921 (Utah 2014) (noting that an insurer may refuse to defend an insured against a third-party action when "the underlying complaint shows on its face that there is no potential for coverage" (citation omitted)).

10

In Utah, Hudson, as the insurer, has a duty to defend claims that potentially fall within the scope of the coverage provided. *Equine Assisted Growth & Learning Ass'n v. Carolina Cas. Ins. Co.*, 266 P.3d 733, 735–36 (Utah 2011). But Utah permits insurers "to limit or modify its obligations to provide coverage through explicit exclusions," provided that those exclusions "clearly and unmistakably communicate[] to the insured the specific circumstances under which the expected coverage will not be provided." *Headwaters Res.*, 770 F.3d at 892 (citations omitted). The insured bears the burden to allege a claim for relief potentially covered by the insurance policy. *See Wells Fargo Bank, N.A. v. Stewart Title Guar. Co.*, 55 F.4th 801, 808 n.10 (10th Cir. 2022) (applying Utah law). The burden then shifts to the insurer to prove that an exclusion to coverage applies. *LDS Hosp. v. Capitol Life Ins.*, 765 P.2d 857, 859–60 (Utah 1988).

To determine whether an insurance policy potentially covers the insured's claim and thus triggers the insurer's duty to defend, Utah applies the "eight corners" rule.[4] *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019). "A court looks first to the policy language defining the

---

[4] The duty to defend and duty to indemnify are distinct duties, with the duty to defend being broader. *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1328 (10th Cir. 2019) (first citing *Fire Ins. Exch. v. Est. of Therkelsen*, 27 P.3d 555, 561 (Utah 2001); and then citing *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127, 133 (Utah 1997)). So if Hudson had no duty to defend it had no duty to indemnify. *See id.* ("If there was no duty to defend, there cannot be a duty to indemnify.").

11

scope of the duty to defend; it then looks to the face of the complaint and determines if the terms either establish or eliminate a duty to defend." *Id.*; *see Equine Assisted Growth*, 266 P.3d at 737 ("If the language found within the collective 'eight corners' of these documents clearly and unambiguously indicates that a duty to defend does or does not exist, the analysis is complete."). The duty to defend depends on whether the facts as alleged in the complaint, "if proved by the plaintiff at trial[,] would result in liability under the policy." *Deseret Fed. Sav. & Loan Ass'n v. U.S. Fid. & Guar. Co.*, 714 P.2d 1143, 1147 (Utah 1986). "[E]ven if the allegations" in the complaint are "groundless, false, or fraudulent," if those facts taken as true "could result in liability under the policy," there is potential coverage for which the insurer owes the insured a duty to defend. *Id.* What the insurer cannot do is "simply say, 'We don't believe that the plaintiff can prove what [s]he is alleging,'" because at the motion-to-dismiss stage we assume the plaintiff can prove what she is alleging. *Id.* So instead we consider whether those allegations taken as true "could result in liability under the policy." *Id.* This inquiry brings us to the eight-corners analysis, which is "a matter of contract interpretation" and therefore a legal issue. *Headwaters Res.*, 770 F.3d at 891; *see Basic Rsch., LLC v. Admiral Ins. Co.*, 297 P.3d 578, 579 (Utah 2013) ("[T]he interpretation of a contract is a question of law.").

Because the A&B Exclusion's applicability to Juarez's dramshop claim against Quantum is dispositive of the plausibility of Juarez's assigned contract

claims against Hudson, the district court correctly focused on that exclusion. By doing so, the district court did not err or improperly reach the merits, as Juarez asserts. Indeed, only by first resolving whether the A&B Exclusion applied to Juarez's dramshop claim could the district court determine the plausibility of Juarez's assigned contract claims. That was the principal question before it in ruling on Hudson's motion to dismiss. We thus agree with the district court that it needed to decide whether the A&B Exclusion applied to Juarez's dramshop claim.

II.     **The district court did not err in determining that the A&B Exclusion excludes coverage of Juarez's dramshop claim, which makes Juarez's contract claims against Hudson implausible.**

Juarez maintains that even if the court could consider the applicability of the A&B Exclusion to Juarez's dramshop claim at the motion-to-dismiss stage, it erroneously interpreted the exclusion.

In reviewing the district court's decision de novo, we return to the words of the A&B Exclusion:

> This insurance does not apply to claims arising out of an assault and/or battery, whether caused by or at the instigation of, or at the direction of, or omission by, the insured, and/or his employees.

App. vol. I, at 42 ¶ 6.

Juarez advances three arguments against the district court's ruling that Hudson had no duty to defend based on the A&B Exclusion: (1) that her claims against Quantum alleged a violation of Utah's dramshop statute, not assault and battery; (2) that the A&B Exclusion unambiguously applies to assaults and

batteries committed by Quantum and its employees only, not by anyone else, including patrons like Manatau; and (3) that, alternatively to the second argument, the A&B Exclusion is ambiguous about whether it applies beyond only Quantum and its employees, and so should be construed in favor of coverage for Juarez's dramshop claim against Quantum. Hudson responds that the district court correctly ruled that the A&B Exclusion applied to Juarez's dramshop claim, because the exclusion indisputably and unambiguously precludes coverage for claims "arising out of" assaults and batteries, including those committed by club patrons like Manatau. Hudson has the better of the argument.

### A.    The A&B Exclusion unambiguously denies coverage for any claim "arising out of" an assault or battery.

Utah courts broadly interpret "arising out of" as used in insurance contracts.[5] *Nat'l Farmers Union Prop. & Cas. Co. v. W. Cas. & Sur. Co.*, 577 P.2d 961, 963 (Utah 1978) ("The term 'arising out of' is ordinarily understood to mean originating from, incident to, or connected with the item in question."); *see Utah Transit Auth. v. Greyhound Lines, Inc.*, 355 P.3d 947, 961–62 (Utah 2015) (discussing Utah's "broad interpretation" of "'arising out of' language in the insurance context"). Under that broad construction, Utah

---

[5] Before the district court, Juarez "agree[d] that arising out of is broadly construed," App. vol. II, at 26, and focused her argument instead on the second clause of the exclusion: "whether caused by or at the instigation of, or at the direction of, or omission by, the insured, and/or his employees," App. vol. I, at 42 ¶ 6; *see* App. vol. II, at 20–21.

14

courts don't consider "arising out of" as requiring a "causal relationship between the injury and the risk for which coverage is provided." *Nat'l Farmers Union*, 577 P.2d at 963 (stating that "[t]he phrase 'arising out of' is equated with origination, growth, or flow from the event" and has "much broader significance than 'caused by'"). Rather, "arising out of" requires only that "some nexus" exist between Juarez's dramshop claim against Quantum and her injuries. *Meadow Valley Contractors, Inc. v. Transcon. Ins. Co.*, 27 P.3d 594, 597 (Utah Ct. App. 2001) (citing *Nat'l Farmers Union*, 577 P.2d at 963); *see, e.g.*, *Gibbs M. Smith, Inc. v. U.S. Fid. & Guar. Co.*, 949 P.2d 337, 343 (Utah 1997) (ruling that "arising out of" as used in an insurance contract requires no more than "a causal connection" between the property damaged and the property covered by the policy). So here, this means that a "causal relationship" or "some nexus" must have existed between Juarez's dramshop claim and Juarez's injuries sustained from Manatau's assault and battery.

Consistent with Utah courts' broad reading of "arising out of" as used in insurance contracts, we conclude that Juarez's dramshop claim against Quantum had a causal connection with or nexus to the injuries caused by Manatau's assault and battery. Indeed, Juarez's complaint against Quantum alleged: "*As a direct and proximate result* of serving intoxicating alcoholic products to Rocky Manatau, [Juarez] was severely injured, suffering economic

15

and non-economic damages."[6] App. vol. I, at 55 ¶ 44 (emphasis added); *see also id.* at 53 ¶ 30 ("[Manatau] followed [Juarez] out to [her] car, and then struck [Juarez] in the face[.]"). This states an obvious point—that Juarez's injuries "originat[ed] from," were "incident to," or were "connected with" an assault and battery. *Nat'l Farmers Union*, 577 P.2d at 963. Under Utah law's broad construction, Juarez's injuries arose from an assault or battery.[7]

---

[6] Juarez has never contested that Manatau's attack was an assault and battery. Hudson's response brief states: "It is undisputed that the allegations in the underlying complaint are all based upon the allegations that a bar patron caused injuries to Ms. Juarez via assault and battery." Resp. Br. at 12. In her reply, Juarez challenges the A&B Exclusion solely based on Manatau's not being a Quantum employee, but she does not dispute that his actions constituted assault and battery. *See generally* Reply Br. We therefore accept that what happened in the parking lot was an assault and battery.

[7] Our sibling circuits have likewise interpreted "arising out of" to capture any claim for relief that could not have accrued without the occurrence of an assault or battery. For instance, the Eleventh Circuit in *Doe v. Hudson Specialty Insurance Co.*, considered the applicability of an exclusion similar to Hudson's A&B Exclusion. 719 F. App'x 951, 952 (11th Cir. 2018). In that case, the plaintiff alleged that a nightclub had overserved her, leaving her vulnerable to sexual assault by another nightclub patron. *Id.* Interpreting Florida law, which construes "arising out of" as broadly as Utah law does, the circuit court affirmed the district court's ruling that the assault-and-battery exclusion barred coverage of the plaintiff's claims because her complaint "specifically allege[d] a connection between [her] intoxication, which resulted from a [nightclub] employee's negligent distribution of alcoholic beverages, and the sexual assault." *Id.* at 953. Based on the plaintiff's allegations, the circuit court ruled that her claims were "undeniably capture[d]" by the assault-and-battery exclusion. *Id.*; *see also, e.g.*, *Burlington Ins. Co. v. De La Puente*, 719 F. App'x 615, 618 (9th Cir. 2018) (rejecting plaintiffs' argument that the nightclub's negligence was a "distinct cause[]" of injury separate from the assault and battery); *Archie v. Acceptance Indem. Co.*, 507 F. App'x 451, 454 (5th Cir. 2013) (reasoning that even if the plaintiff wasn't the "intended target" of a nightclub shooting, his injuries "arose out of [the assailant's] assault" and

(*footnote continued*)

Juarez's complaint alleges a connection between the club overserving Manatau and his assault and battery against her. *See* App. vol. I, at 55 ¶ 44. It doesn't matter that Juarez's complaint premises her claims on an alleged violation of Utah's dramshop statute and avoids the words "assault" or "battery." Juarez has not explained how she could support a dramshop claim against Quantum had Manatau not committed an assault and battery against her. After all, Quantum is liable under Utah's dramshop statute only if she was injured because the nightclub overserved Manatau. *See* Utah Code Ann. § 32B-15-201(b)(iii) (establishing liability for injury or damages that "result from the intoxication of the individual who is provided the alcoholic product"). And because Juarez would have no dramshop claim against Quantum for overserving Manatau if not for the assault and battery, we conclude that Juarez's claim "arises out of" an assault and battery and thus that the A&B Exclusion applies to her dramshop claim against Quantum.

---

therefore the insurance policy's assault-and-battery exclusion applied to his claim); *Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 93 F.3d 63, 66 (2d Cir. 1996) ("Because [the plaintiff] would be unable to maintain claims for negligent supervision, maintenance, and control 'but for' the assault upon her, under New York law her claims are 'based on' assault and battery and therefore excluded from coverage under the insurance policy."); *Essex Inc. v. Michigan Skatelands, Inc.*, 38 F.3d 1215, 1215 (6th Cir. 1994) (unpublished table decision) ("Though Michigan Skatelands characterizes the three underlying claims against it as breach of contract and negligence claims, the underlying claims clearly arose out of tortious conduct."); *United Nat'l Ins. Co. v. Ent. Grp., Inc.*, 945 F.2d 210, 214 (7th Cir. 1991) ("The exclusion in [the insurer's] policy . . . clearly states that there will be no coverage for claims arising from assault and battery, regardless of whether the injury results from the intentional acts or omissions (negligence) of the insured.").

> **B.** **The A&B Exclusion's "whether caused by" clause does not limit the applicability of the exclusion to assaults and batteries committed only by Quantum and its employees.**

Juarez next asserts that even if her claim arises out of an assault and battery, the "whether caused by" clause in the A&B Exclusion—"whether caused by or at the instigation of, or at the direction of, or omission by, the insured, and/or his employees"—means that the exclusion applies only to claims that arise from assaults or batteries committed by Quantum or its employees. Op. Br. at 33–35. In her view, "whether" sets out a limited list of "alternative conditions or possibilities" covered by the exclusion because "whether" is a synonym for "if." *Id.* at 34. Under this interpretation, Juarez contends that what follows "whether caused by" is an exhaustive list of the conditions that can trigger the A&B Exclusion. *See id.* at 33–35; Reply Br. at 6–7. And if Juarez is correct, then the A&B Exclusion could not apply to her claim because Manatau was not Quantum's employee.

We agree with the district court that Juarez's interpretation misreads the A&B Exclusion.

The A&B Exclusion appears under this heading: "**<u>Assault & Battery Exclusion – Absolute</u>**." App. vol. I, at 42; *see, e.g.*, *Quaid v. U.S. Healthcare, Inc.*, 158 P.3d 525, 529 (Utah 2007) (looking to the applicable heading to aid in interpreting an insurance policy exclusion). The policy then frames the exclusion's application under the "arising out of" language, which we've established Utah courts construe broadly. *See* Discussion § II.A, *supra*.

18

Together, this language signals to us an emphatic rejection of any coverage for any claim related to an assault or battery. *See Compton*, 393 P.3d at 307 (emphasizing that the "first step" in interpreting an insurance policy is to construe the contractual terms "to give effect to the intentions of the parties" (citation omitted)). Given the word "absolute" in the heading and the broad construction of the "arising out of" language, we disagree that the "whether caused by" language creates the limiting principle that Juarez suggests. *See In re W. Ins. Co.*, 521 P.3d 851, 859 (Utah 2022) ("Under our caselaw a reasonable interpretation is an interpretation that cannot be ruled out, after considering the natural meaning of the words in the contract provision in context of the contract as a whole, as one the parties could have reasonably intended." (quoting *Brady v. Park*, 455 P.3d 395, 408 (Utah 2019))); *cf. United Nat'l Ins. Co. v. Penuche's Inc.*, 128 F.3d 28, 31 (1st Cir. 1997) (interpreting an identical assault-and-battery exclusion and rejecting the argument that the "whether" clause limited the exclusion's applicability to assaults and batteries caused by the insured or its employees). Rather, we read this language as reinforcing to insureds that the A&B Exclusion also applies to Quantum and its employees.

And so we reject Juarez's assertion that the plain language of the A&B Exclusion applies to claims arising out of assaults or batteries committed by Quantum's employees only.

19

**C.    The A&B Exclusion is not ambiguous.**

The plain and ordinary meaning of the A&B Exclusion's language reveals that the exclusion's relevant language is not ambiguous. An insurance policy's language is ambiguous if it is reasonably and fairly susceptible of different constructions. *Compton*, 393 P.3d at 310. Ambiguities in insurance-policy language are construed against the insurance-company drafter. *Dyno Nobel*, 85 F.4th at 1026. But Utah law cautions courts to avoid straining to create an ambiguity where none exists. *Compton*, 393 P.3d at 310; *Headwaters Res.*, 770 F.3d at 892. Indeed, ambiguity occurs only where the meaning is genuinely uncertain after we give a "plausible and reasonable" construction "in light of the language used." *S.W. Energy Corp.*, 947 P.2d at 1242. If we can ascertain the parties' intention from the plain language, we apply the policy language as written. *BV Jordanelle*, 830 F.3d at 1201 ("[I]f the [policy] language is unambiguous, the court ascertains the parties' intentions based solely on the [policy] language.").

For the reasons we've already explained, we can ascertain the parties' intent from the A&B Exclusion's plain language, which precludes coverage for Juarez's dramshop claim against Quantum. Because we detect no ambiguity to

20

construe in Juarez's favor, *Dyno Nobel*, 85 F.4th at 1026, we reject her

alternative ambiguity-based arguments.[8]

### III.  Because Hudson had no duty to defend or indemnify Quantum, Juarez's contract claims against Hudson are implausible.

Having concluded that the A&B Exclusion unambiguously denies

coverage for any claim "arising out of" an assault or battery—whether that

assault or battery was committed by a Quantum employee or a customer or

---

[8] Juarez builds her ambiguity argument on a Ninth Circuit case that examined an assault-and-battery exclusion identical to the one in Hudson's policy. *See Desrosiers v. Hudson Specialty Ins. Co.*, 438 F. App'x 629, 631 (9th Cir. 2011) (applying Oregon law). Under analogous facts, the plaintiff in *Desrosiers* argued that his negligence claim escaped the assault-and-battery exclusion because that claim pleaded an alternative theory for recovery, separate from his intentional tort claim. *Id.* The Ninth Circuit ruled, in an unpublished order, that "negligence allegations triggered [the insurer's] duty to defend because the policy exception covers assault and battery, which are intentional torts, so the allegation that [the plaintiff's] injuries were caused by [the club's] negligence fall outside the scope of the policy's exclusion." *Id.* (citation omitted).

In Juarez's view, that the Ninth Circuit's interpretation differed from the First Circuit's in *United National Insurance Co. v. Penuche's Inc.*, 128 F.3d 28 (1st Cir. 1997), "support[s] a finding that the assault and battery exclusion of [Hudson's] Policy 'is unclear' or 'may be understood to have two or more plausible meanings.'" Op. Br. at 35, 39. We are unpersuaded.

First, *Desrosiers* is unpublished and lacks any substantive analysis of the relevant exclusionary language that would "assist [us] in [our] disposition." *United States v. Engles*, 779 F.3d 1161, 1162 n.1 (10th Cir. 2015). Indeed, unlike *Penuche's*, the *Desrosiers* court didn't engage with the policy language, or consider the precise meaning of "whether"—let alone interpret that language differently. Second, both *Penuche's* and *Desrosiers* applied the assault-and-battery exclusion in favor of the insured. *See Desrosiers*, 438 F. App'x at 631; *Penuche's*, 128 F.3d at 33. Third, *Desrosiers*'s holding—that the plaintiff's negligence claim escaped the assault-and-battery exclusion, which applied to bar only "intentional torts"—is a minority position among the federal circuits. *Supra* n.7. In short, Juarez's ambiguity arguments relying on *Desrosiers* are unconvincing.

anyone else—we conclude that Juarez's dramshop claim falls under the A&B Exclusion. Because this is so, Hudson had no duty to defend or indemnify Quantum against Juarez's dramshop claim. And if Hudson had no duty to defend or indemnify Quantum, it did not breach the contract by declining to do so. Thus, Quantum could not prevail on any contract claims against Hudson. So we affirm the district court's determination that Juarez's contract claims against Hudson (as Quantum's assignee) are implausible.

## CONCLUSION

For these reasons, we affirm the district court's order granting Hudson's motion to dismiss.

Entered for the Court

Gregory A. Phillips
Circuit Judge